UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **REVEREND PATRICK J. MAHONEY,** ) <br> 4019 Duke of Gloucester ) <br> Fredericksburg, VA  22407 ) <br> ) <br> **CHRISTIAN DEFENSE COALITION,** ) <br> 109 2nd Street NE ) <br> Washington, DC 20002 ) <br> ) <br> **BRANDI SWINDELL**, ) <br> 4950 North Bradley Street ) <br> Boise, ID 83714 ) <br> ) <br> **GENERATION LIFE** ) <br> 4950 North Bradley Street ) <br> Boise, ID 83714 ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> -vs.- ) <br> ) <br> **GALE NORTON**, in her official capacity ) <br> as **SECRETARY OF THE UNITED** ) <br> **STATES DEPARTMENT OF THE** ) <br> **INTERIOR,** ) <br> 1849 C Street NW ) <br> Room 6151 ) <br> Washington, DC  20240, and ) <br> ) <br> **THE NATIONAL PARK SERVICE** ) <br> 1849 C Street NW ) <br> Room 3104 ) <br> Washington, DC 20240 ) <br> ) <br> *Defendants.* ) | **CIVIL ACTION NO.** <br><br> _____ |

**VERIFIED COMPLAINT
FOR DECLARATORY JUDGMENT
AND INJUNCTIVE RELIEF**

The Plaintiffs, by counsel, complain as follows:

Verified Complaint--Page 1

# I.
# INTRODUCTION

(1)     The Plaintiffs bring this action to obtain injunctive relief and a judgment declaring unconstitutional certain already inflicted and other threatened deprivations of their First, Fourth, and Fifth Amendment rights and rights under the Religious Freedom Restoration Act by the Secretary of the Interior and the National Park Service.

(2)     The Defendants have revoked existing permits already obtained by the Plaintiffs, and will give further effect to their actions by arresting, detaining and prosecuting the Plaintiffs for demonstrating without a permit if the Plaintiffs carry through with their planned activities.

(3)     The permit revocation and any arrest and detention of the Plaintiffs consequent thereto will interfere with the peaceful exercise of the Plaintiffs' federal rights to the freedom of speech, of assembly, to petition for redress of grievances, of association and of religion, as well as their rights to due process of law and their implied right equal protection of the laws.

# II.
# JURISDICTION AND VENUE

(4)     In this action, brought under the Religious Freedom Restoration Act and the Declaratory Judgment Act, the Plaintiffs seek relief to cure an already inflicted deprivation of federal rights and to ameliorate threatened future deprivations of those federal rights.

(5)     Congress vested jurisdiction in this Court with respect to the subject matter and the parties hereto by virtue of 28 U.S.C. §§ 1331, 1343(a)(4), 2201 and 2202.

(6)     Venue is appropriate in the District of Columbia, in accord with 28 U.S.C. § 1391(e), because all of the acts threatened to be taken that would constitute the injury to the Plaintiffs are threatened to occur in the District of Columbia.

## III.
## PARTIES

### THE PLAINTIFFS

(7)    Reverend Patrick J. Mahoney is a citizen of the United States and a resident of the Eastern District of Virginia.

(8)    Reverend Patrick J. Mahoney directs the Christian Defense Coalition.

(9)    The Christian Defense Coalition is an unincorporated religious association.

(10)    The Christian Defense Coalition represents a national coalition of pro-life, activist, Christians.

(11)    Brandi Swindell is a citizen of the United States and a resident of Idaho.

(12)    Brandi Swindell directs Generation Life.

(13)    Generation Life is an unincorporated association of young, Christian, pro-life activists.

### THE DEFENDANTS

(14)    Gale Norton, the Secretary of the United States Department of the Interior, is sued in her official capacity as the representative for the Department of the Interior.

(15)    The Secretary of the Interior, through the National Park Service, promulgates and enforces regulations for administering the United States National Park System.

(16)    The National Park Service is a service within the United States Department of the Interior, responsible for the promotion and regulation of the use of Federal parks.

## IV.
## ALLEGATIONS OF FACT

### The National Mall

(17)     The National Mall is a strip of open land in the District of Columbia.

(18)     Within the boundaries of the National Mall are monuments, roadways, walkways, paths, sidewalks, reflecting pools, fountains, and expanses of grass.

(19)     Within the Department of the Interior, the National Park Service maintains and controls the Mall.

(20)     The Mall's sidewalks and walkways are continuous through approximately fifteen city blocks of the federal corridor in the District of Columbia.

(21)     No special enclosures mark the perimeter of the National Mall.

(22)     No gated entrances secure access to it.

(23)     Unlike many of the federal buildings in near proximity to it, there are no requirements that persons passing along on the sidewalks, paths, walkways, and roads of the Mall produce identification as a precondition to that privilege.

(24)     In all factual respects, the National Mall is a public park.

### The Park Service Permit System

(25)     The National Park Service regulates access to the National Mall for special events and demonstrations through a permit system.

(26)     Those regulations govern all federal parklands in and around the District of Columbia.

(27)     The principal regulation governing such activities is 36 C.F.R. § 7.96.

(28)     The parks of the National Capitol Region include a broad variety of properties, such

as the sidewalks along Pennsylvania Avenue, public squares like Lafayette Park, natural preserves such as Rock Creek Park, and multi-use locations such as the National Mall.

(29)    The National Park Service made no distinction in drawing up its rules for special events and demonstrations for the very different kinds of properties that are subject to the permit requirement for demonstrations under the regulation.

<u>The National Mall: A History of Expressive Use</u>

(30)    Over the years, many large scale demonstrations and special events have occurred on, or made use of, the National Mall.

(31)    Those demonstrations and special events include, for example, portions of the Veterans' Bonus march during the Great Depression, the March on Washington of the civil rights movement, the Million Man March, and the Promise Keepers Stand in the Gap rally.

(32)    Those uses contrasted starkly with the quietly serene, park-like setting and other aesthetic values of the National Mall.

(33)    During each of those large demonstrations and special events, on information and belief, the National Park Service requires permit holders to keep park sidewalks and pathways open and clear for pedestrian uses.

(34)    Numerous large scale uses of the National Mall are conducted directly by the Government and its agencies, such as the annual patchwork of entertainment, educational and vending sites that the Government advertises as the "Festival of American Folklife."

(35)    From time to time, the Government's Smithsonian Institution uses the sidewalks along the National Mall as a commercial site for the sale of subscriptions to its publications, including Air and Space.

(36)    From time to time, the Government's Smithsonian Institution has used the sidewalks along the National Mall as a commercial site to invite members of the public to apply for vanity credit cards in the name of Smithsonian Institution, exchanging a Museum T-shirt for each completed credit card application.

(37)    Despite their adverse impact on the aesthetics of the National Mall, the Government encourages such uses by its agencies.

<u>The 2004 "March for Freedom of Choice"</u>

(38)    A coalition of organizations advocating legalized abortion, including the Feminist Majority, NARAL Pro-Choice America, the National Organization for Women, and the Planned Parenthood Federation of America, organized an event to take place on the National Mall on April 25, 2004.

(39)    Information that purports to be offered by those sponsoring organizations about the planned march and rally can be found on the Internet at the March for Women's Lives webpage at http://www.marchforwomen.org (visited April 13, 2004).

(40)    According to an April 7, 2004, letter to Reverend Patrick Mahoney from Richard Merryman, Chief, Division of Park Programs, of the National Park Service, "The March for Women's Lives . . . is expected by organizers to bring 750,000 participants and will need the Mall and its sidewalks for their event."

(41)    According to the website of event organizers,

"Assembly for the morning rally will begin at 10:00 AM, on the national mall between the Smithsonian museums (between 3rd St. and 14th). The march will begin at noon. After marching on Washington, a rally will be held from 1-4 p.m. on the National Mall."

http://www.marchforwomen.org/about/index.php?PHPSESSID=bc57e5f31469089a97d0fd350d8

df82e (visited April 13, 2004).

(42)    The website organizers for the March state the purpose of the March as follows:

The time is right for a public demonstration of historic size in support of reproductive freedom and justice for all women. Threats to these rights have never been so systematic and coordinated, and the lives and health of women have never faced such peril. On April 25th, in our Nation's Capitol we march to uphold – Choice, Justice, Access, Health, Abortion, Global and Family Planning.

http://www.marchforwomen.org/about/index.php (visited April 13, 2004).

(43)    On information and belief, the event organizers have described their plan for the events of April 25, 2004, as follows: assembly on National Mall in the vicinity of the Lincoln Memorial, depart from Mall for March on Washington, reassemble on National Mall in the vicinity of the foot of Capitol Hill for a program of speakers and activities.

<u>The Plaintiffs: Faith-based Opposition to Legalized Abortion</u>

(44)    Reverend Mahoney is a Christian, and an ordained Presbyterian minister.

(45)    Reverend Mahoney sincerely holds religious beliefs that he is obliged by the Great Commission to preach the gospel of salvation through Jesus Christ to the whole world, and to confront sin in the contemporary culture, and to minister to those whose lives are impacted by the ready availability of abortion services in the United States.

(46)    Obedient to those beliefs, Mahoney goes to public places and events to create opportunities to preach the gospel, peacefully confront sin in the contemporary culture, and to minister to those impacted by the ready availability of abortion in the United States.

(47)    Mahoney has associated himself with other like-minded persons who are also Christians, those individuals also joining with Mahoney in his outreach activities.

(48)    Brandi Swindell is, likewise, a Christian.

Verified Complaint--Page 7

(49)     Swindell is compelled by the tenets of her faith to pursue the cause of justice, including restoration of justice in law to protect human beings before birth.

(50)     Because of the tenets of her faith, Swindell has dedicated her time and efforts to bringing public witness to bear on the status of legalized abortion, the harm that it causes to women, and the obvious devastation it inflicts on unborn children.

(51)     As part of her faith-based pursuit of justice, Swindell has also engaged in public demonstrations and outreaches expressing opposition to abortion and ministering to those injured by ready availability to abortion.

(52)     Generation Life is a youth-centered, non-profit social justice organization dedicated to ending the violence and injustice that the abortion industry inflicts on women and children.

(53)     Generation Life explains its purpose on the website it maintains on the world wide web at http://www.generationlife.net/who_we_are.html (visited April 13, 2004).

(54)     Among the purposes of General Life are spreading the pro-life message through music, media, dialogue, political action, various educational and outreach projects, and producing a new generation of pro-lifers who can present their case with facts, reason, courage, and integrity.

(55)     Through these outreaches, Generation Life is committed to helping Christians find a place to build the culture of life and share the pro-life message.

(56)     It is the sincerely held religious belief of Swindell and Generation Life that Christians must stand up with passion and courage and proclaim the gospel of life.

Applications for Permits for April 25, 2004, Activities on the National Mall

(57)     The organizers of the March for Women's Lives, upon information and belief, have filed an application for a permit to conduct that March on the National Mall.

(58)    On January 20, 2004, Mahoney and his associates applied for a permit to use certain properties under the control of the National Park Service, for a prayer event including the display of signs regarding abortion.

(59)    Mahoney's application was assigned number 04-754.

(60)    Mahoney's application sought the use of Constitution Avenue's south sidewalks from 3rd to 21st Streets for 100 to 2,000 participants.

(61)    On February 2, 2004, Mahoney amended his application to request additional properties for the activities, in particular, Madison Drive's south sidewalk, Jefferson Drive's north sidewalk, and the east-west sidewalks on the National Mall between 4th and 14th Streets.

(62)    On March 17, 2004, Mahoney again amended his permit to request use of Madison Drive's north sidewalk, Jefferson Drive's south sidewalk, and a display of a helium-balloon display.

(63)    On April 9, 2004, Mahoney amended his permit a final time, seeking to limit the number of participants on the Madison Drive north sidewalk and Jefferson Drive south sidewalk to 24 persons displaying signs.

(64)    A federal regulation promulgated by the National Park Service, 36 C.F.R. § 7.96(g)(3), provides that a fully executed application for a permit to demonstrate is "deemed granted" if it is not denied within twenty-four hours of receipt.

(65)    Accordingly, no later than, respectively, January 22, 2004, February 4, 2004, March 19, 2004, and April 11, 2004, pursuant to federal regulation, the permit application and its amendments were deemed granted.

### April 17, 2004 Meeting Between Mahoney and Park Police

(66)    On March 17, 2004, representatives of the United States Park Police met with

Mahoney and his wife, Kathleen Mahoney, at 10 a.m.

(67)    The Park Police representatives were Officer Blain and Officer Green.

(68)    During the meeting, the participants discussed Mahoney's permit application for their planned peaceful sign display adjacent to Madison and Jefferson Drives.

(69)    The fact of Mahoney's permit application and amendments to that date were acknowledged.

(70)    The fact that the National Park Service had not acted to deny the permit application and amendment was also acknowledged.

(71)    Reference was made to the "deemed granted" rule.

(72)    The Park Police representatives agreed that this procedure was standard with respect to demonstration and special event permit applications.

(73)    During the meeting, the Park Police representatives stated that they did not have any answer for Mahoney on whether or not his permit would be approved for the sidewalks adjacent to Madison and Jefferson Drives.

(74)    Specifically, the Park Police representatives stated that they could not tell what would be approved because another permit was pending for that same day, for a different group, and that other group did not *know* which area they wanted to be in yet.

(75)    The Park Police representatives indicated that the indecision of the other applicant group put Mahoney's application under a cloud of uncertainty.

(76)    An indication was given in the meeting that the delay of decision by the other applicant group was, or could be, deliberate so as to thwart Mahoney's demonstration permit.

(77)    When describing the apparent planned use of the National Mall by the competing

applicant, one Park Police representative, Officer Blain, said the use would be "curb to curb."

(78)    "Curb-to-curb" use of the National Mall by the competing applicant would leave the north sidewalk along Madison Drive and the south sidewalk along Jefferson Drive free for pedestrian passage and for use by counter-demonstrators.

Correspondence Exchanged

(79)    Concerned that his permit and amendments, which were deemed granted by law, either would be revoked by the Service or would not be acted on at all, Mahoney contacted legal counsel and sought assistance in resolving the matter.

(80)    Legal counsel for Mahoney transmitted a letter of inquiry to the Director of the National Park Service, Fran Mainella, seeking clarification of the circumstances.

(81)    Subsequently, on April 7, 2004, Terry Carlstrom and Richard Merryman, of the National Park Service, sent a letter, addressed to Reverend Mahoney, by fax transmission to the fax machine of Mahoney's legal counsel.

(82)    That letter included a copy of the issued permit No. 04-754, allowing Mahoney and his associates to use the Constitution Avenue south sidewalk from 3rd to 21st Streets for a prayer vigil and demonstration on April 25, 2004.

(83)    One condition of the permit, on its face, requires that "All sidewalks, walkways, and roadways must remain unobstructed to allow for the reasonable use of these areas by pedestrians, vehicles and other park visitors."

The Incredible Disappearing Permit: "Deemed Granted" Permits Revoked

(84)    36 C.F.R. § 7.96(g)(3), provides that a "deemed granted" permit may be revoked by the Field Director, in accord with subsequent subsections of the regulation.

(85)    In the correspondence of April 7, 2004, Carlstrom and Merryman state that they "must deny portions of [Mahoney's] application," specifically all other sites sought by Mahoney in his applications amendments, including the east-west Mall sidewalks, the north and south sidewalks adjacent to Madison Drive and the north and south sidewalks adjacent to Jefferson Drive.

(86)    On April 16, 2004, in correspondence addressed to Reverend Mahoney, the "deemed granted" permit obtained as a result of the application filed on April 9, 2004, was revoked.

<u>The South Sidewalk Adjacent to Jefferson Drive</u>
<u>and the North Sidewalk Adjacent to Madison Drive</u>

(87)    As with the other sidewalks and walkways along the National Mall, the sidewalks adjacent to Jefferson and Madison are broad pedestrian walkways.

(88)    These sidewalks are continuous through the National Mall, and constitute an important means of passage for tourists and others.

(89)    These sidewalks are not marked by any special enclosure, any gated entrances, any posted requirements for identification, any restriction imposing limitations on access.

## V.
## ALLEGATIONS OF LAW

(90)    Both now and at the time of the incidents described herein, the United States Constitution protected from governmental infringement the right to freedom of speech, the right to peaceable assembly, the right to petition for redress of grievances, the right to free exercise of religion, the right to due process of law, and the right to equal protection of the law, and the Religious Freedom Restoration Act clearly protected from governmental infringement the right to religious freedom.

(91)    The defendants know now that their conduct violates federal statutes and the

Constitution, or they should be treated as having such knowledge.

(92)    The past and future deprivations constitute injuries of rights protected by the United States Constitution, the Declaratory Judgment Act, and the Religious Freedom Restoration Act.

(93)    The Plaintiffs do not have any adequate remedy at law for the injuries threatened against them by the National Park Service and the Department of the Interior.

## VI. CLAIMS ASSERTED AGAINST THE DEFENDANTS

### FIRST CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO FREEDOM OF SPEECH GUARANTEED BY THE FIRST AMENDMENT

(94)    The Plaintiffs allege and incorporate herein by reference all the preceding paragraphs of this Verified Complaint.

(95)    The Plaintiffs' planned display of signs containing messages of opposition to legalized abortion is protected from suppression by the Secretary and the National Park Service because of content or viewpoint by the Free Speech Clause of the First Amendment.

(96)    A suppression of speech, accomplished by the National Park Service and the Secretary, because another complains of the content or viewpoint of the suppressed speech still constitutes content or viewpoint based suppression of expression.

(97)    Plaintiffs' activities will take place on public sidewalks in the District of Columbia.

(98)    The revocation of Plaintiffs' deemed granted permits and arrests and prosecutions consequent to the revocation will violate the Plaintiffs' First Amendment right to freedom of speech.

(a)    The revocation and any subsequent arrests for demonstrating without a permit are viewpoint-based restrictions that would be unconstitutional even in a nonpublic forum.

(b)    The permit revocation and any subsequent arrests for demonstrating without

a permit are viewpoint-based restrictions that do not further any compelling government interest, or that do not do so in the least restrictive manner.

(c)    The ban on the Plaintiffs' sign displays is not a reasonable regulation.

WHEREFORE, the Plaintiffs respectfully pray that the Court grant the relief set out in the Prayer for Relief below.

**SECOND CAUSE OF ACTION:**
**ALLEGING VIOLATION OF THE**
**RELIGIOUS FREEDOM RESTORATION ACT**

(99)    The Plaintiffs allege and incorporate herein by reference all the preceding paragraphs of this Verified Complaint.

(100)    The Plaintiffs efforts to communicate their messages regarding abortion are born of their sincerely held religious convictions.

(101)    The Plaintiffs' sincerely held religious convictions compel them to communicate their opposition to abortion in times and at places where those who have lauded legalized abortion are gathered.

(102)    These convictions do not reflect mere religious preference or consideration; instead, they embody several tenets of the religion of which the Plaintiffs are adherents.

(103)    The National Park Service's revocation of a deemed granted permit and its arrests in enforcement of its regulation prohibiting demonstrations without permits are government actions that affect or restrict the exercise of the Plaintiffs' religious freedom by substantially burdening them.

(104)    The National Park Service permit denial violates, and subsequent arrests will violate, the Plaintiffs' rights under the Religious Freedom Restoration Act because these actions are not

justified by any compelling governmental interest.

(105)   The National Park Service permit denial violates, and subsequent arrests will violate, the Plaintiffs' rights under the Religious Freedom Restoration Act because these actions are not the least restrictive means available to serve any compelling governmental interest asserted by the National Park Service.

WHEREFORE, the Plaintiffs respectfully pray that the Court grant the relief set out in the Prayer for Relief below, including the Declaration of Rights, the issuance of injunctive relief, and the award of costs, including a reasonable award of attorney's fees, in accord with the provisions of the Religious Freedom Restoration Act.

### THIRD CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO PEACEABLY ASSEMBLE GUARANTEED BY THE FIRST AMENDMENT

(106)   The Plaintiff alleges and incorporates herein all the preceding paragraphs of the Verified Complaint.

(107)   The right of peaceable assembly includes the right to advocate one's views and opinions in open public places for the purpose of seeking and obtaining social and governmental change.

(108)   The Plaintiffs planned sign displays constitute peaceful advocacy by members of the body politic.

(109)   The sidewalks adjacent to Jefferson and Madison Drives in the District of Columbia always constitute an archetype of the traditional public forum.

(110)   The Plaintiffs' opposition of legalized abortion is protected from governmental suppression in the traditional public forum by the right to peaceable assembly.

(111)   The denial of the requested permit and the enforcement of that denial by arrests for demonstrating without a permit chills and abridges the right of the Plaintiffs to peaceably assemble.

WHEREFORE, the Plaintiffs respectfully pray that the Court grant the relief set out in the Prayer for Relief .

### FOURTH CAUSE OF ACTION:
### ALLEGING VIOLATION OF RIGHT TO DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AMENDMENT

(112)   The Plaintiffs allege and incorporate herein all the preceding paragraphs of the Verified Complaint.

(113)   The regulations regarding demonstrations in National Capitol Region Parks, including the sidewalks along Jefferson and Madison Drives, are unconstitutionally vague.

(114)   36 C.F.R. § 7.96(g)(3) is unconstitutionally vague because it is written to misleadingly communicate to a permit applicant that, if a permit application is not denied with twenty-four hours, the permit is granted.

(115)   36 C.F.R. § 7.96(g)(3) employs the nuanced regulatory phrase "deemed granted," the meaning of which is lost on men of common or ordinary intelligence.

(116)   36 C.F.R. § 7.96(g)(3), (4), and (6) suffer from an additional, unconstitutional vagueness defect, in that pursuant to (g)(3) a "deemed granted" permit may be revoked by the Regional Director in accord with the provisions of (g)(6); (g)(6), in turn, states that a permit may be revoked  in writing for the reasons set forth in (g)(4) and (5); (g)(4)(iii)(A), then, provides that a permit can be revoked when a prior fully executed permit application for the same time and the same place has been received, which application when granted would authorize activities that would not reasonably permit multiple occupancy of the requested area.

(117)    As a consequence of the interdependent working of subsections (g)(3), (4), and (6), a permit that has been "deemed granted" is subject to revocation if, in the judgment of unidentified persons, the activity contemplated in the "deemed granted" permit is such that the National Park Service could not permit multiple occupancy .

(118)    As a consequence of the interdependent working of subsections (g)(3), (4), and (6), a permit that has been "deemed granted" is subject to revocation if, based on an unidentified set of standards or without any concrete, objective standards at all, the activity contemplated in the "deemed granted" permit is such that the National Park Service could not permit multiple occupancy.

(119)    Upon information and belief, the judgment of whether multiple occupancy may be reasonably permitted is made by the person, persons, group or groups that have filed the prior permit application, with absolutely no concrete, objective standards confining the discretion so assigned to such parties.

(120)    Because no standards are established for determining whether multiple occupancy can reasonably be permitted, and/or because such standardless discretion is conveyed to private parties under the regulation, the regulation fails to adequately advise persons subject to prosecution under it of the obligations it creates.

(121)    Because of the failure of the regulation to provide adequate notice of required or prohibited conduct, it is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment.

(122)    The regulation is irrational and unreasonable, imposing irrational and unreasonable restrictions on the exercise of pristine constitutional rights.

(123)   Because the policy is irrational and unreasonable, it violates the Due Process Clause of the Fifth Amendment.

WHEREFORE, the Plaintiffs respectfully pray that the Court grant the relief set out in the Prayer for Relief below.

**FIFTH CAUSE OF ACTION:
ALLEGING VIOLATION OF THE IMPLIED
RIGHT TO EQUAL PROTECTION
GUARANTEED BY THE FIFTH AMENDMENT**

(124)   The Plaintiff alleges and incorporates herein all the preceding paragraphs of the Verified Complaint.

(125)   The Department of the Interior and the National Park Service, by their employees, will arrest Reverend Mahoney, Brandi Swindell, and their associates with the Christian Defense Coalition and Generation Life during the pro-abortion march and rally on April 25, 2004, if they display signs expressing opinions opposing the value or propriety of legalized abortion.

(126)   Such arrests are the means by which the Defendants enforce the regulatory scheme under which the Plaintiffs have had their "deemed granted" permit for their planned activities revoked.

(127)   Such arrests will occur result from the conclusion by the National Park Service that that the content or viewpoint of the Plaintiffs' signs unreasonably interferes with the pro-abortion march and rally on April 25, 2004.

(128)   The determination that such signs unreasonably interfere will constitute viewpoint-based and content-based decision-making about the fitness of the messages being communicated by the Plaintiffs and those associated with them.

(129)   To the extent that 36 C.F.R. § 7.96 directs the National Park Service to deny

demonstration permits for competing uses based on judgments about the content of messages communicated by demonstrators, that regulation unconstitutionally discriminates among speakers based on the content and viewpoint of their speech, but is not justified as necessary to accomplish a compelling interest.

(130)  Arrests and prosecutions because of private or governmental disagreement with the content or viewpoint of speech does not constitute the least restrictive means of serving any compelling government  interest.

(131)  To the extent that National Park Service conditions the permit it granted to Mahoney and his associates on maintaining free from obstruction the sidewalk along Constitution Avenue, but did not condition the permit issued to the organizers of the March for Women's Lives on the same condition, the National Park Service has disparately treated, and disadvantaged, Mahoney and his associates in the permitting process, in violation of the right to equal treatment and protection of the laws.

WHEREFORE the Plaintiffs respectfully pray that the Court grant the relief set out in the Prayer for Relief below.

## GENERAL PRAYER

(132)  The Plaintiffs respectfully pray, on the foregoing, that the Court grant judgment as set forth herein:

A.    That the Court enter a declaratory judgment, declaring the rights and relations of the parties herein;

B.    That the Court enter preliminary and permanent injunctive relief against further denial of a permit to Reverend Mahoney, the Christian Defense Coalition, Brandi Swindell,

Generation Life, allowing for up to, but no more than, twenty-four (24) persons to stand on the north sidewalk adjacent to Madison Drive and the south sidewalk adjacent to Jefferson Drive along the National Mall and to display signs expressing their views in opposition to legalized abortion.

(133)  The Plaintiffs respectfully pray that the Court award to them the costs of this litigation, including a reasonable award of attorneys fees pursuant to the provisions of the Religious Freedom Restoration Act, Title 42 U.S.C. §§ 2000bb, and the Equal Access to Justice Act, Title 28 U.S.C. § 2412.

(134)  The Plaintiffs respectfully pray that the Court award to them such other and further relief as the Court deems just.

Dated:  April 19th, 2004.

Respectfully submitted,

James Matthew Henderson Sr. # 452639
  *Counsel of Record*
Colby M. May # 394340
The American Center for Law and Justice
201 Maryland Avenue NE
Washington, DC  20002
Telephone:    (202) 546-8890
Facsimile:    (202) 337-3167

*Attorneys for the Plaintiffs*

## **VERIFICATION OF COMPLAINT**

I, Reverend Patrick J. Mahoney, a citizen of the United States and of the Commonwealth of Virginia, hereby declare under penalty of perjury, that I have personal knowledge of the facts contained in the foregoing complaint, and that those statements of fact are true and correct.

Executed on this 19th day of April, 2004, in the District of Columbia.

_____
REVEREND PATRICK J. MAHONEY

## **VERIFICATION OF COMPLAINT**

I, Brandi Swindell, a citizen of the United States and of the State of Idaho, hereby declare under penalty of perjury, that I have personal knowledge of the facts contained in the foregoing complaint, and that those statements of fact are true and correct.

Executed on this 19th day of April, 2004, in the District of Columbia.

_____
BRANDI SWINDELL