UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**REVEREND PATRICK J. MAHONEY,** )
*et al.,* )
                     )         **CIVIL ACTION NO.**
       *Plaintiffs,* )
                     )        _____
                     )
         **-vs.-** )
                     )
**GALE NORTON**, in her official capacity )
as **SECRETARY OF THE UNITED** )
**STATES DEPARTMENT OF THE** )
**INTERIOR,** *et al.,* )
                     )
      *Defendants.* )

## MOTION FOR A TEMPORARY RESTRAINING ORDER

The Plaintiffs respectfully pray the Court enter an Order, in the nature of a Temporary Restraining Order, in the form submitted with this Order, enjoining and restraining the Secretary of the Department of the Interior and the National Park Service, and all those in active concert with them, from arresting or interfering with one or a group of twenty-four or fewer of the plaintiffs displaying signs while standing on the north sidewalk adjacent to Madison Drive and/or the south sidewalk adjacent to Jefferson Drive during the March for Women's Lives expressing opposition to abortion or criticism of its legality except in circumstances in which the Secretary and the National Park Service and their agents would arrest or interfere with individuals displaying signs not critical of legalized abortion.

For, and in support of the motion, Mahoney, Swindell, the Christian Defense Coalition and Generation Life have annexed hereto their declarations sworn on penalty of perjury, other supporting exhibits, and a Statement of Points and Authorities Supporting the Motion, along with a form of the proposed Order, and the required certification in accord with Local Civil Rule

Motion for TRO Page 1

65 of the efforts of counsel to notify the defendants and their counsel of this proceeding.

WHEREFORE, the plaintiffs respectfully pray that the Court grant their motion and issue the requested temporary restraining order in the form submitted herewith, or in a form such as justice and the rights of the parties requires.

Dated:  April 20, 2004.

Respectfully submitted,

_____

James Matthew Henderson Sr. # 452639
  *Counsel of Record*
Colby M. May # 394340
The American Center for Law and Justice
201 Maryland Avenue NE
Washington, DC  20002
Telephone:    (202) 546-8890
Facsimile:    (202) 337-3167

*Attorneys for the Plaintiffs*

**PLAINTIFFS' EXHIBITS SUPPORTING
THE MOTION FOR TEMPORARY RESTRAINING ORDER**

Declaration of Reverend Patrick J. Mahoney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 1

Declaration of Brandi Swindell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 2

Application for Permit for Demonstration for the "March for Women's Lives" . . . . . . Exhibit 3

Mahoney Application for Permit dated Jan. 20, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 4

Mahoney Application Amendment dated Feb. 2, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 5

Mahoney Application Second Amendment dated March 17, 2004 . . . . . . . . . . . . . . . . Exhibit 6

Mahoney Application Third Amendment dated April 9, 2004 . . . . . . . . . . . . . . . . . . . Exhibit 7

Letter from Carlstrom and Merryman to Mahoney dated March 17, 2004 . . . . . . . . . . Exhibit 8

Permit Granted to Mahoney by National Park Service . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 9

Second Letter from Carlstrom and Merryman to Mahoney dated April 15, 2004 . . . . Exhibit 10

Third Letter from Merryman to Mahoney dated April 16, 2004 . . . . . . . . . . . . . . . . . . Exhibit 11

# **EXHIBIT 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **REVEREND PATRICK J. MAHONEY**, *et al.*, | ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | **CIVIL ACTION NO.** |
| -vs.- | ) ) ) | _____ |
| **GALE NORTON**, in her official capacity as **SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR**, *et al.*, | ) ) ) ) ) | |
| *Defendants.* | ) | |

## DECLARATION OF REVEREND PATRICK MAHONEY

I, Reverend Patrick J. Mahoney, hereby declare under penalty of perjury:

(1)     I am a citizen of the United States and I reside in the Commonwealth of Virginia.

(2)     I am an ordained Presbyterian minister.

(3)     I direct the Christian Defense Coalition.

(4)     The Christian Defense Coalition is an unincorporated association of pro-life, activist, Christians.

(5)     The National Mall is a strip of open land in the District of Columbia.

(6)     Within the boundaries of the National Mall are monuments, roadways, walkways, paths, sidewalks, reflecting pools, fountains, and expanses of grass.

(7)     Within the Department of the Interior, the National Park Service maintains and

<div style="border:1px solid">

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 1

</div>

controls the Mall.

(8)    The Mall's sidewalks and walkways are continuous through approximately fifteen city blocks of the federal corridor in the District of Columbia.

(9)    No special enclosures mark the perimeter of the National Mall.

(10)    No gated entrances secure access to it.

(11)    Unlike many of the federal buildings in near proximity to it, there are no requirements that persons passing along on the sidewalks, paths, walkways, and roads of the Mall produce identification as a precondition to that privilege.

(12)    In all factual respects, the National Mall is a public park.

(13)    The National Park Service regulates access to the National Mall for special events and demonstrations through a permit system.

(14)    Those regulations govern demonstrations and special events on all federal parklands in and around the District of Columbia.

(15)    The principal regulation governing such activities is 36 C.F.R. § 7.96.

(16)    The parks of the National Capitol Region include a broad variety of properties, such as the sidewalks along Pennsylvania Avenue, public squares like Lafayette Park, natural preserves such as Rock Creek Park, and multi-use locations such as the National Mall.

(17)    No consideration is made in the rules for the very different kinds of properties that are subject to the permit requirement for demonstrations under the regulation.

(18)    Over the years, many large scale demonstrations and special events have occurred

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 2

on, or made use of, the National Mall.

(19)    Those demonstrations and special events include, for example, portions of the Veterans' Bonus march during the Great Depression, the March on Washington of the civil rights movement, the Million Man March, and the Promise Keepers Stand in the Gap rally.

(20)    Those uses contrasted starkly with the quietly serene, park-like setting and other aesthetic values of the National Mall.

(21)    During each of those large demonstrations and special events, on information and belief, the National Park Service requires permit holders to keep park sidewalks and pathways open and clear for pedestrian uses.

(22)    Numerous large scale uses of the National Mall are conducted directly by the Government and its agencies, such as the annual patchwork of entertainment, educational and vending sites that the Government advertises as the "Festival of American Folklife."

(23)    From time to time, the Government's Smithsonian Institution uses the sidewalks along the National Mall as a commercial site for the sale of subscriptions to its publications, including Air and Space.

(24)    From time to time, the Government's Smithsonian Institution has used the sidewalks along the National Mall as a commercial site to invite members of the public to apply for vanity credit cards in the name of Smithsonian Institution, exchanging a Museum T-shirt for each completed credit card application.

(25)    Despite their adverse impact on the aesthetics of the National Mall, the

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 3

Government encourages such uses by its agencies.

(26)    A coalition of organizations that advocate for legalized abortion, including the Feminist Majority, NARAL Pro-Choice America, the National Organization for Women, and the Planned Parenthood Federation of America, have organized an event to take place on the National Mall on April 25, 2004.

(27)    Information that purports to be offered by those sponsoring organizations about the planned march and rally can be found on the Internet at the March for Women's Lives webpage at http://www.marchforwomen.org (visited April 13, 2004).

(28)    According to an April 7, 2004, letter to me from Richard Merryman, Chief, Division of Park Programs, of the National Park Service, "The March for Women's Lives . . . is expected by organizers to bring 750,000 participants and will need the Mall and its sidewalks for their event."

(29)    According to the website of event organizers,

"Assembly for the morning rally will begin at 10:00 AM, on the national mall between the Smithsonian museums (between 3rd St. and 14th). The march will begin at noon. After marching on Washington, a rally will be held from 1-4 p.m. on the National Mall."

http://www.marchforwomen.org/about/index.php?PHPSESSID=bc57e5f31469089a97d0fd350d8 df82e (visited April 13, 2004).

(30)    The website organizers for the March state the purpose of the March as follows:

The time is right for a public demonstration of historic size in support of reproductive freedom and justice for all women. Threats to these rights have

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 4

never been so systematic and coordinated, and the lives and health of women have never faced such peril. On April 25th, in our Nation's Capitol we march to uphold – Choice, Justice, Access, Health, Abortion, Global and Family Planning.

http://www.marchforwomen.org/about/index.php (visited April 13, 2004).

(31)    On information and belief, the event organizers have described their plan for the events of April 25, 2004, as follows: assembly on National Mall in the vicinity of the Lincoln Memorial, depart from Mall for March on Washington, reassemble on National Mall in the vicinity of the foot of Capitol Hill for a program of speakers and activities.

(32)    I hold the belief, religious in nature and binding on my conscience, that I am obliged by the Great Commission to preach the gospel of salvation through Jesus Christ to the whole world, and to confront sin in the contemporary culture, and to minister to those whose lives are impacted by the ready availability of abortion services in the United States.

(33)    In obedience to those beliefs, I go to public places and events to create opportunities to preach the gospel, confront sin in the contemporary culture, and to minister to those impacted by the ready availability of abortion in the United States.

(34)    I associate myself with other like-minded persons who are also Christians, those individuals also joining with me in my outreach activities.

(35)    The organizers of the March for Women's Lives, upon information and belief, have filed an application for a permit to conduct that March on the National Mall.

(36)    On January 20, 2004, me and associates applied for a permit to use certain properties under the control of the National Park Service, for a prayer event including the display

<div style="text-align: right;">
Mahoney v. Norton, No. 04cv_____<br>
filed April 20, 2004<br>
Exhibit 1 in Support of Motion for TRO<br>
Page 5
</div>

of signs regarding abortion.

(37)    Our application was assigned number 04-754.

(38)    Our application sought the use of Constitution Avenue's south sidewalks from 3rd to 21st Streets for 100 to 2,000 participants.

(39)    On February 2, 2004, I amended our application to request additional properties for the activities, in particular, Madison Drive's south sidewalk, Jefferson Drive's north sidewalk, and the east-west sidewalks on the National Mall between 4th and 14th Streets.

(40)    On March 17, 2004, I again amended our permit to request use of Madison Drive's north sidewalk, Jefferson Drive's south sidewalk, and a display of a helium-balloon display.

(41)    On April 9, 2004, I amended our permit a final time, seeking to limit the number of participants on the Madison Drive north sidewalk and Jefferson Drive south sidewalk to 24 persons displaying signs.

(42)    A federal regulation promulgated by the National Park Service, 36 C.F.R. § 7.96(g)(3), provides that a fully executed application for a permit to demonstrate is "deemed granted" if it is not denied within twenty-four hours of receipt.

(43)    Accordingly, no later than, respectively, January 22, 2004, February 4, 2004, March 19, 2004, and April 11, 2004, pursuant to federal regulation, the permit application and its amendments were deemed granted.

(44)    On March 17, 2004, representatives of the United States Park Police met with me

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 6

and my wife, Kathleen Mahoney, at 10 a.m.

(45)   The Park Police representatives were Officer Blain and Officer Green.

(46)   During the meeting, we discussed our permit application for their planned peaceful sign display adjacent to Madison and Jefferson Drives.

(47)   The fact of our permit application and amendments to that date were acknowledged.

(48)   The fact that the National Park Service had not acted to deny the permit application and amendment was also acknowledged.

(49)   Reference was made to the "deemed granted" rule.

(50)   The Park Police representatives agreed that this procedure was standard with respect to demonstration and special event permit applications.

(51)   During the meeting, the Park Police representatives stated that they did not have any answer for me on whether or not my permit would be approved for the sidewalks adjacent to Madison and Jefferson Drives.

(52)   Specifically, the Park Police representatives stated that they could not tell what would be approved because another permit was pending for that same day, for a different group, and that other group did not *know* which area they wanted to be in yet.

(53)   The Park Police representatives indicated that the indecision of the other applicant group put our application under a cloud of uncertainty.

(54)   An indication was given in the meeting that the delay of decision by the other

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 7

applicant group was, or could be, deliberate so as to thwart our demonstration permit.

(55)    When describing the apparent planned use of the National Mall by the competing applicant, one Park Police representative, Officer Blain, said the use would be "curb to curb."

(56)    "Curb-to-curb" use of the National Mall by the competing applicant would leave the north sidewalk along Madison Drive and the south sidewalk along Jefferson Drive free for pedestrian passage and for use by counter-demonstrators.

(57)    Concerned that our permit, which was deemed granted by operation of a National Park Service regulation, would be revoked by the Service, or would not be acted on at all, I contacted legal counsel and sought assistance in resolving the matter.

(58)    My legal counsel transmitted a letter of inquiry to the Director of the National Park Service, Fran Mainella, seeking clarification of the circumstances.

(59)    Subsequently, on April 7, 2004, Terry Carlstrom and Richard Merryman, of the National Park Service, sent a letter, addressed to me, by fax transmission to the fax machine of my legal counsel.

(60)    That letter included a copy of the issued permit No. 04-754, allowing me and my associates to use the Constitution Avenue south sidewalk from 3rd to 21st Streets for a prayer vigil and demonstration on April 25, 2004.

(61)    One condition of the permit, on its face, requires that "All sidewalks, walkways, and roadways must remain unobstructed to allow for the reasonable use of these areas by pedestrians, vehicles and other park visitors."

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 1 in Support of Motion for TRO
Page 8

(62)    36 C.F.R. § 7.96(g)(3), provides that a "deemed granted" permit may be revoked by the Field Director, in accord with subsequent subsections of the regulation.

(63)    In the correspondence of April 7, 2004, Carlstrom and Merryman state that they "must deny portions of [our] application," specifically all other sites we sought in our application amendments, including the east-west Mall sidewalks, the north and south sidewalks adjacent to Madison Drive and the north and south sidewalks adjacent to Jefferson Drive.

(64)    As of the date that I signed this declaration, no specific denial has been made in writing of our final application amendment limiting participants along Madison and Jefferson Drives to twenty-four individuals.

(65)    In the April 7, 2004, correspondence, however, the National Park Service representatives discuss the basis for denial of the amended permit applications in terms that assure that the National Park Service will, when forced by circumstances to do so, revoke our amended permit that was deemed granted on or about April 11, 2004.

(66)    As with the other sidewalks and walkways along the National Mall, the sidewalks adjacent to Jefferson and Madison are broad pedestrian walkways.

(67)    These sidewalks are continuous through the National Mall, and constitute an important means of passage for tourists and others.

(68)    These sidewalks are not marked by any special enclosure, any gated entrances, any posted requirements for identification, any restriction imposing limitations on access.

(69)    I am already suffering injury at the hands of the National Park Service in the form

of the Service's revocation of the permit that was "deemed granted" pursuant to the Service's own rules.

(70)    I am threatened with additional injury because the National Park Service and the United States Park Police will arrest and detain me and my associates if we carry out our demonstration of sign displays in accord with the plans described in our April 9, 2004, amended application.

(71)    Such arrests and detentions, and subsequent prosecutions will deprive me of constitutional rights and civil liberties.

(72)    No award of money damages can take the place of the "deemed granted" permit that the National Park Service is revoking from us.

(73)    There is no other cure or fix for the wrong inflicted on us, and the wrongs that will be inflicted on us absent this Court's aid.

Further your declarant sayeth not.

I, Reverend Patrick J. Mahoney, a citizen of the United States and of the Commonwealth of Virginia, hereby declare under penalty of perjury, that I have personal knowledge of the facts contained in the foregoing complaint, and that those statements of fact are true and correct.

Executed on this 19th day of April, 2004, in the District of Columbia.

_____
REVEREND PATRICK J. MAHONEY

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY, )<br>*et al.*, )<br>　　　　　 )<br>　　*Plaintiffs*, )<br>　　　　　 )<br>　　　-vs.- )<br>　　　　　 )<br>GALE NORTON, in her official capacity )<br>as **SECRETARY OF THE UNITED** )<br>**STATES DEPARTMENT OF THE** )<br>**INTERIOR,** *et al.*, )<br>　　　　　 )<br>　　*Defendants*. ) | **CIVIL ACTION NO.**<br>_____ |

## DECLARATION OF BRANDI SWINDELL

I, Brandi Swindell, hereby declare, under penalty of perjury of the District of Columbia:

(1)　　I am a citizen of the United States and I reside in Idaho.

(2)　　I direct Generation Life.

(3)　　Generation Life is an unincorporated association of young, Christian, pro-life activists.

(4)　　A coalition of organizations that advocate for legalized abortion, including the Feminist Majority, NARAL Pro-Choice America, the National Organization for Women, and the Planned Parenthood Federation of America, have organized an event to take place on the National Mall on April 25, 2004.

(5)　　Information that purports to be offered by those sponsoring organizations about

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 2 in Support of Motion for TRO
Page 1

the planned march and rally can be found on the Internet at the March for Women's Lives

webpage at http://www.marchforwomen.org (visited April 13, 2004).

(6)    According to the website of event organizers,

"Assembly for the morning rally will begin at 10:00 AM, on the national mall between the Smithsonian museums (between 3rd St. and 14th). The march will begin at noon. After marching on Washington, a rally will be held from 1-4 p.m. on the National Mall."

http://www.marchforwomen.org/about/index.php?PHPSESSID=bc57e5f31469089a97d0fd350d8

df82e (visited April 13, 2004).

(7)    The website organizers for the March state the purpose of the March as follows:

The time is right for a public demonstration of historic size in support of reproductive freedom and justice for all women. Threats to these rights have never been so systematic and coordinated, and the lives and health of women have never faced such peril. On April 25th, in our Nation's Capitol we march to uphold – Choice, Justice, Access, Health, Abortion, Global and Family Planning.

http://www.marchforwomen.org/about/index.php (visited April 13, 2004).

(8)     On information and belief, the event organizers plan to assemble on the National

Mall, conduct a "March on Washington" using several streets and avenues along the way, and

then return to the Mall in the vicinity of the foot of Capitol Hill.

(9)    I am compelled by the tenets of my faith to pursue the cause of justice, including

restoration of justice in law to protect human beings before birth.

(10)    Because of the tenets of my faith, I have dedicated time and effort to bringing

public witness to bear on the status of legalized abortion, the harm that it causes to women, and

<div style="border:1px solid black; padding:8px; text-align:right; width:50%; margin-left:auto;">

<u>Mahoney v. Norton</u>, No. 04cv_____<br>
filed April 20, 2004<br>
Exhibit 2 in Support of Motion for TRO<br>
Page 2

</div>

the obvious devastation it inflicts on unborn children.

(11)    As part of my faith-based pursuit of justice, I have also engaged in public demonstrations and outreaches expressing opposition to abortion and ministering to those injured by ready availability to abortion.

(12)    Generation Life is a youth-centered, non-profit social justice organization dedicated to ending the violence and injustice that the abortion industry inflicts on women and children.

(13)    Generation Life explains its purpose on the website it maintains on the world wide web at http://www.generationlife.net/who_we_are.html (visited April 13, 2004).

(14)    Among the purposes of General Life are spreading the pro-life message through music, media, dialogue, political action, various educational and outreach projects, and producing a new generation of pro-lifers who can present their case with facts, reason, courage, and integrity.

(15)    Through these outreaches, Generation Life is committed to helping Christians find a place to build the culture of life and share the pro-life message.

(16)    It is my sincerely held religious belief, and that of Generation Life, that Christians must stand up with passion and courage and proclaim the gospel of life.

(17)    On January 20, 2004, on his own behalf, and my behalf, and on behalf of Generation Life, Reverend Patrick J. Mahoney applied for a permit to use certain properties under the control of the National Park Service, for a prayer event including the display of signs

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 2 in Support of Motion for TRO
Page 3

regarding abortion.

(18)    Mahoney's application was assigned number 04-754.

(19)    Mahoney's application sought the use of Constitution Avenue's south sidewalks from 3rd to 21st Streets for 100 to 2,000 participants.

(20)    On February 2, 2004, Mahoney amended his application to request additional properties for the activities, in particular, Madison Drive's south sidewalk, Jefferson Drive's north sidewalk, and the east-west sidewalks on the National Mall between 4th and 14th Streets.

(21)    On March 17, 2004, Mahoney again amended his permit to request use of Madison Drive's north sidewalk, Jefferson Drive's south sidewalk, and a display of a helium-balloon display.

(22)    On April 9, 2004, Mahoney amended his permit a final time, seeking to limit the number of participants on the Madison Drive north sidewalk and Jefferson Drive south sidewalk to 24 persons displaying signs.

(23)    A federal regulation promulgated by the National Park Service, 36 C.F.R. § 7.96(g)(3), provides that a fully executed application for a permit to demonstrate is "deemed granted" if it is not denied within twenty-four hours of receipt.

(24)    Accordingly, no later than, respectively, January 22, 2004, February 4, 2004, March 19, 2004, and April 11, 2004, pursuant to federal regulation, the permit application and its amendations were deemed granted.

(25)    On April 7, 2004, Terry Carlstrom and Richard Merryman, of the National Park

Service, sent a letter, addressed to Reverend Mahoney, by fax transmission to the fax machine of Mahoney's legal counsel.

(26)   That letter included a copy of the issued permit No. 04-754, allowing Mahoney and his associates to use the Constitution Avenue south sidewalk from 3rd to 21st Streets for a prayer vigil and demonstration on April 25, 2004.

(27)   One condition of the permit, on its face, requires that "All sidewalks, walkways, and roadways must remain unobstructed to allow for the reasonable use of these areas by pedestrians, vehicles and other park visitors."

(28)   36 C.F.R. § 7.96(g)(3), provides that a "deemed granted" permit may be revoked by the Field Director, in accord with subsequent subsections of the regulation.

(29)   In the correspondence of April 7, 2004, Carlstrom and Merryman state that they "must deny portions of [Mahoney's] application," specifically all other sites sought by Mahoney in his applications amendments, including the east-west Mall sidewalks, the north and south sidewalks adjacent to Madison Drive and the north and south sidewalks adjacent to Jefferson Drive.

(30)   As of the date that I signed this declaration, no specific denial has been made in writing of Mahoney's final application amendment limiting participants along Madison and Jefferson Drives to twenty-four individuals.

(31)   As with the other sidewalks and walkways along the National Mall, the sidewalks adjacent to Jefferson and Madison are broad pedestrian walkways.

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 2 in Support of Motion for TRO
Page 5

(32)    These sidewalks are continuous through the National Mall, and constitute an important means of passage for tourists and others.

(33)    These sidewalks are not marked by any special enclosure, any gated entrances, any posted requirements for identification, any restriction imposing limitations on access.

(34)    I am already suffering injury at the hands of the National Park Service in the form of the Service's revocation of the permit that was "deemed granted" pursuant to the Service's own rules.

(35)    I am threatened with additional injury because the National Park Service and the United States Park Police will arrest and detain me and my associates if we carry out our demonstration of sign displays in accord with the plans described in our April 9, 2004, amended application.

(36)    Such arrests and detentions, and subsequent prosecutions will deprive me of constitutional rights and civil liberties.

(37)    No award of money damages can take the place of the "deemed granted" permit that the National Park Service is revoking from us.

(38)    There is no other cure or fix for the wrong inflicted on us, and the wrongs that will be inflicted on us absent this Court's aid.

Further your declarant sayeth not.

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 2 in Support of Motion for TRO
Page 6

## VERIFICATION OF DECLARATION

I, Brandi Swindell, a citizen of the United States and of the State of Idaho, hereby declare under penalty of perjury, that I have personal knowledge of the facts contained in the foregoing declaration, and that those statements of fact are true and correct.

Executed on this 19th day of April, 2004, in the District of Columbia.

_____
BRANDI SWINDELL

Mahoney v. Norton, No. 04cv_____
filed April 20, 2004
Exhibit 2 in Support of Motion for TRO
Page 7

# EXHIBIT 3

Paperwork Reduction Act & Privacy Act Statement. In accordance to 36 CFR 7.96 (g), this regulation gives us the authority to require applicants to fill out this form to request permits for special events or demonstrations. A Federal Agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. Confidentiality of this information is assured subject to the provisions of the Freedom of Information Act. Additional disclosures of the information may be to the United States Park Police, the District of Columbia Metropolitan Police Department, and any other affected law enforcement agencies.

Public reporting for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Chief of Park Programs Division, National Park Service, National Capital Region, 1100 Ohio Dr., S.W., Washington, D.C. 20242.

OMB CONTROL NUMBER: 1024-0021

EXPIRES: 04/30/04

# NATIONAL PARK SERVICE, NATIONAL CAPITAL REGION
## APPLICATION FOR A PERMIT TO CONDUCT A DEMONSTRATION OR SPECIAL EVENT IN PARK AREAS AND A WAIVER OF NUMERICAL LIMITATIONS ON DEMONSTRATIONS FOR WHITE HOUSE SIDEWALK* AND/OR LAFAYETTE PARK

04-0115

4-23-03

Date of this Application

1. Individual and/or organization sponsor(s): Feminist Majority; NARAL Pro Choice America; National Organization for Women; Planned Parenthood Federation of America

Address: C/o Feminist Majority 1600 Wilson Blvd #801 Arlington, VA 22200

Telephone Nos. (include area code): Day 703-522-2214 Evening

2. This is an application for a permit to conduct a DEMONSTRATION __X__
SPECIAL EVENT _____. (For definitions, see instruction page.)

3. This is an application for a WAIVER OF THE NUMERICAL LIMITATIONS on certain demonstrations. YES _____ NO _X_ (A waiver is required if it is expected that a demonstration on the White House Sidewalk* will include more than 750 participants or that a demonstration in Lafayette Park will include more than 3,000 participants.

4. Date(s) of proposed activity: From 4/20/04 To 4/26/04
Month/Day/Year        Month/Day/Year

Time: Begin: 6:00 (a.m.)(p.m.)  Terminate: 8:00 (a.m.)(p.m.)

Location(s) of proposed activity. (Include assembly and dispersal areas.)
Lincoln Memorial Grounds; Washington Monument Grounds; Ellips; Lafayette Park; Sylvan Theatre; Mall from 1st St to Washington Monument Grounds

Purpose of proposed activity: March + Rally for Freedom of Choice

Estimated maximum number of participants. (If more than one park area is to be used, list numbers separately for each area.) 750, 000+ total both Assembly and Rally Sites

The "White House Sidewalk" is the sidewalk between East and West Executive Avenues, on the south side of Pennsylvania Avenue, NW.

8. Will cleanup people be provided for the area: _X_ YES ____ NO. How will they be identified? __Sashes__

9. Person(s) in charge of activity. (One person must be listed as in charge of the activity. If different individuals are to be in charge of various activities at different locations, each must be listed.)

Person in charge: __Alice Cohan__

Address: __c/o Feminist Majority 1600 Wilson Blvd #801, Arlington, VA 22209__

Telephone Nos. (Include area code): Day __703-522-2214__ Evening ▓▓▓▓▓▓▓▓

10. Plans for proposed activity. (Include a list of all principal speakers and the complete time schedule for the activity. Include proposed route of any march or parade, and plans for the orderly termination and dispersal of the proposed activity which might affect the regular flow of city traffic.) _____

__See attached__

11. (a) List all props, stages, sound equipment, and other items to be provided by applicant/sponsor. (Include approximately number and size(s) of supports, standards, and handles; necessary medical/sanitary facilities and other similar items.) _____

__See attached__

(b) If boxes, crates, coffins, or similar items will be used, state whether they are to be carried opened or closed, their proposed size, the materials constructed from, and their proposed contents and use. _____

__No__

12. (a) Do you have any reason to believe or any information indicating that any individual, group, or organization might seek to disrupt the activity for which this application is submitted? ____ Yes _X_ NO

(b) If "YES," list each such individual, group, or organization, with all information as to each, including address and telephone numbers.

_____

13. MARSHALS: (a) Will applicant/sponsor furnish marshals? (Required for waivers of numerical limitations and for demonstration activities held simultaneously on White House Sidewalk and Lafayette Park.) _X_ YES ____ NO. If "YES," how many marshals will be furnished? __Several hundred__

(b) Person(s) responsible for supervision of marshals (for each location):

Location(s): _____

Name(s): Alice Cohan

Address(es): c/o Feminist Majority 1600 Wilson Blvd #801 Arlington VA, 22209

Telephone Nos.: Day: 703-522-2214    Evening: ▓▓▓▓▓▓▓▓▓

(c)    List the functions the marshals are expected to perform: bus parking + drop-off; security; peace-keeping; assembly; march; rally; dispersal; clean-up; etc.

**QUESTIONS 14, 15 AND 16 MUST BE ANSWERED IF THIS IS AN APPLICATION FOR A WAIVER OF NUMERICAL LIMITATIONS. IF THIS IS NOT AN APPLICATION FOR A WAIVER, DO NOT ANSWER THESE QUESTIONS.**

14. What communications equipment will be provided to the marshals? (Include the number of walkie-talkies, CB radios, bullhorns, public address systems, flashlights, etc.)

_____

_____

15. How will the marshals be identified? _____

16. State specifically the plans for ingress and egress of the participants to and from Lafayette Park including proposed sites for loading and unloading of buses, automobiles, or other forms of transportation which the participants are expected to use (supply chart if necessary). _____

_____

_____

**APPLICATION IS NOT VALID UNLESS SIGNED**

President, Feminist Majority
President, Nat'l Organization for Women
President, NARAL Pro-Choice America

Eleanor Smeal
Kim Gandy
Kate Michelman

_____
Position of person filing application          Signature of person filing application

Eleanor Smeal                    c/o FM 1600 Wilson Blvd #801 Arlington, VA 22209
Kim Gandy                        c/o NOW 733 15th St. NW Wash DC 20005
Kate Michelman                   c/o NARA 1156 15th St NW 700 WDC 20005
Gloria Feldt                     c/o PPFA 1780 Mass Ave NW WDC 20036
_____
Typed or printed name of person          Address of person filing application
Filing application

Telephone Nos. of person filing application (include area code):

Day: 703-522-2214          Evening: ▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓

K. Gandy: 202-628-8669
                    x 120
Michelman 202-973-3000
Feldt      202-785-3351

National Park Service
Permit Application attachments

10. Assemble by delegation on Lincoln Memorial Grounds and Washington Monument grounds. MC with speakers and music as participants assemble. There will be a historic/artistic display on the issues using the Ellipse and its roadways (6am – 8pm); a vigil at Lafayette Park; religious service at Sylvan theater (6am – 7pm), Women's Memorial in the Capitol Reflecting Pool Area;, and an exhibit covering legal/political aspects of the issues, on the west side of the Capitol.

Route of march: Marchers flow into 17th St. from Washington Monument and Lincoln Memorial Grounds; go north on 17th St., NW to H St., turn right (east) to 15th St., turn right  (south) to Pennsylvania Ave south and turn left (east) to 7th St., NW, turn right (south). Marchers enter the rally site at the mall. Stage for Rally will be located at 3rd St. on the mall. Participants will disperse on foot to metro stops, trains, cars and airports.

11. Banners; signs; sound equipment- towers and relays; stages; press risers; port-a-lets; chairs; tents; tables for information and sales of 1st amendment products; snow fencing; walkie-talkies.

# **EXHIBIT 4**

Paperwork Reduction Act & Privacy Act Statement: In accordance to 36 CFR 7.96 (g), this regulation gives us the authority to require applicants to fill out this form to request permits for special events or demonstrations. A Federal Agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. Confidentiality of this information is assured subject to the provisions of the Freedom of Information Act. Additional disclosures of the information may be to the United States Park Police, the District of Columbia Metropolitan Police Department, and any other affected law enforcement agencies.

Public reporting for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Chief of Park Programs Division, National Park Service, National Capital Region, 1100 Ohio Dr., S.W., Washington, D.C. 20242.

OMB CONTROL NUMBER: 1024-0021                                    EXPIRES: 04/30/04

## NATIONAL PARK SERVICE, NATIONAL CAPITAL REGION
## APPLICATION FOR A PERMIT TO CONDUCT A DEMONSTRATION OR SPECIAL EVENT IN PARK AREAS AND A WAIVER OF NUMERICAL LIMITATIONS ON DEMONSTRATIONS FOR WHITE HOUSE SIDEWALK* AND/OR LAFAYETTE PARK

04-0754                                    1/20/04
                                           Date of this Application

1. Individual and/or organization sponsor(s): _____ Christian De fense Coalition / Generation Life _____

   Address: _____ PO Box 77168 Washington DC 20013 _____
                              202-547-1735                    202-547-1735

   Telephone Nos. (include area code): Day _____ 540.372.8099 _____ Evening _____ 540.372.8099 _____

2. This is an application for a permit to conduct a DEMONSTRATION _____ ✓ _____
   SPECIAL EVENT _____ . (For definitions, see instruction page.)

3. This is an application for a WAIVER OF THE NUMERICAL LIMITATIONS on certain demonstrations. YES _____ NO _____ (A waiver is required if it is expected that a demonstration on the White House Sidewalk* will include more than 750 participants or that a demonstration in Lafayette Park will include more than 3,000 participants.

4. Date(s) of proposed activity: From _4_/_25_/_04_ To _4_/_25_/_04_
                                    Month/Day/Year         Month/Day/Year

   Time: Begin: _8:00_ AM (a.m.)(p.m.)  Terminate: _4:00_ (a.m.)(p.m.)

5. Location(s) of proposed activity. (Include assembly and dispersal areas.)
   _Public sidewalk from 21st to 3rd St on Constitution Ave. NW (South Side)_

6. Purpose of proposed activity: _Prayer vigil and Demonstration to speak out against abortion._

7. Estimated maximum number of participants. (If more than one park area is to be used, list numbers separately for each area.) _100 to 2,000_

*(The "White House Sidewalk" is the sidewalk between East and West Executive Avenues, on

8. Will cleanup people be provided for the area: ✓ YES ____NO. How will they be identified? ____Red arm Bands____

9. Person(s) in charge of activity. (One person must be listed as in charge of the activity. If different individuals are to be in charge of various activities at different locations, each must be listed.)

   Person in charge: ___Rev. Patrick J. Mahoney___

   Address: ___PO Box 77168 Washington DC 20013___

   Telephone Nos. (Include area code): Day___202.547.1735___ Evening ___540.373.8099___
   540.373.8099

10. Plans for proposed activity. (Include a list of all principal speakers and the complete time schedule for the activity. Include proposed route of any march or parade, and plans for the orderly termination and dispersal of the proposed activity which might affect the regular flow of city traffic.) ____

   Individuals will prayer and hold signs standing
   or the dignity of life and speaking out against abortion

11. (a) List all props, stages, sound equipment, and other items to be provided by applicant/sponsor. (Include approximately number and size(s) of supports, standards, and handles; necessary medical/sanitary facilities and other similar items.) ____

   Signs Between 800 - 1,000 (hand held)

   (b) If boxes, crates, coffins, or similar items will be used, state whether they are to be carried opened or closed, their proposed size, the materials constructed from, and their proposed contents and use. ____

12. (a) Do you have any reason to believe or any information indicating that any individual, group, or organization might seek to disrupt the activity for which this application is submitted? ____Yes ✓ NO

   (b) If "YES," list each such individual, group, or organization, with all information as to each, including address and telephone numbers.

13. MARSHALS: (a) Will applicant/sponsor furnish marshals? (Required for waivers of numerical limitations and for demonstration/activities held simultaneously on White House Sidewalk and Lafayette Park.) ✓ YES ____NO. If "YES," how many marshals will be furnished? ____20____

   (b) Person(s) responsible for supervision of marshals (for each location):

   Rev. Patrick J. Mahoney

Location(s): _____

Name(s): ___Rev. Patrick Mahoney_____

Address(es): ___PO Box 77168   Washington DC 20013___

Telephone Nos.: Day: ___202.547.1735___ Evening: ___202.547.1735___

___540.373.809___

(c)　List the functions the marshals are expected to perform: ___Crowd___

___Control___

**QUESTIONS 14, 15 AND 16 MUST BE ANSWERED IF THIS IS AN APPLICATION FOR A WAIVER OF NUMERICAL LIMITATIONS. IF THIS IS NOT AN APPLICATION FOR A WAIVER, DO NOT ANSWER THESE QUESTIONS.**

14. What communications equipment will be provided to the marshals? (Include the number of walkie-talkies, CB radios, bullhorns, public address systems, flashlights, etc.)

_____

_____

15. How will the marshals be identified? _____

16. State specifically the plans for ingress and egress of the participants to and from Lafayette Park including proposed sites for loading and unloading of buses, automobiles, or other forms of transportation which the participants are expected to use (supply chart if necessary). _____

_____

_____

**APPLICATION IS NOT VALID UNLESS SIGNED**

___Director Christian Defense Coalition___　___R. Patrick Mahoney___
Position of person filing application　　Signature of person filing application

___Rev. Patrick J. Mahoney___　　___PO Box 77168　Washington DC 20013___
Typed or printed name of person　　　Address of person filing application
Filing application

Telephone Nos. of person filing application (include area code):

Day: ___202.547.1735___　Evening: ___540.373.8099___

Fax: 540. 373. 8147

# EXHIBIT 5

2/2/04    Amended Application
          for the Christian Defense Coalition

For april 25, 2004

7:00 A.M.  to    4:00 PM.

Seeking ① Madison sidewalks from 4 to 14
           South Side

        ② Jefferson sidewalks from 4 to 14
           North Side

        ③ Public sidewalks from 4 to 14 NW
           both East and west sides.

Rev. Patrick J. Mahoney

202 547 1735

RECEIVED BY
NATIONAL PARK SERVICE-NCA
DIVISION OF PARK PROGRAMS

04 FEB -2 P3:02

Permit # 04-0754

# EXHIBIT 6

amended application   3/17/04

For: Christian Defense Coalition   Mall area
Rev. Patrick J. Mahoney

A.) 4' X 8' helium-inflated display of (a prop) of an
   unborn 20 week old child, hand-held.
3.) Madison sidewalks from 4 to 14   North Side
.) Jefferson sidewalks   from 4 to 14   South side

# EXHIBIT 7

Paperwork Reduction Act & Privacy Act Statement: In accordance to 36 CFR 7.96 (g), this regulation gives us the authority to require applicants to fill out this form to request permits for special events or demonstrations. A Federal Agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. Confidentiality of this information is assured subject to the provisions of the Freedom of Information Act. Additional disclosures of the information may be to the United States Park Police, the District of Columbia Metropolitan Police Department, and any other affected law enforcement agencies.

Public reporting for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Chief of Park Programs Division, National Park Service, National Capital Region, 1100 Ohio Dr., S.W., Washington, D.C. 20242.

OMB CONTROL NUMBER: 1024-0021                                      EXPIRES: 04/30/04

# NATIONAL PARK SERVICE, NATIONAL CAPITAL REGION
## APPLICATION FOR A PERMIT TO CONDUCT A DEMONSTRATION OR SPECIAL EVENT IN PARK AREAS AND A WAIVER OF NUMERICAL LIMITATIONS ON DEMONSTRATIONS FOR WHITE HOUSE SIDEWALK* AND/OR LAFAYETTE PARK

4/9/04
Date of this Application

1. Individual and/or organization sponsor(s): __Christian Defense Coalition / Rev. Patrick Mahoney__

   Address: __PO Box 77168 Washington, DC 20013__

   Telephone Nos. (include area code): Day __540. 373 8099__ Evening __540. 373 8099__  (202. 547. 1735)

2. This is an application for a permit to conduct a DEMONSTRATION __✓__
   SPECIAL EVENT _____. (For definitions, see instruction page.)

3. This is an application for a WAIVER OF THE NUMERICAL LIMITATIONS on certain demonstrations. YES _____ NO __✓__ (A waiver is required if it is expected that a demonstration on the White House Sidewalk* will include more than 750 participants or that a demonstration in Lafayette Park will include more than 3,000 participants.

4. Date(s) of proposed activity: From __04/25/04__ To __04/25/04__
   Month/Day/Year          Month/Day/Year

   Time: Begin: __10:00__ (a.m.)(p.m.)  Terminate: __5:00 PM__ (a.m.)(p.m.)

5. Location(s) of proposed activity. (Include assembly and dispersal areas.)
   __Public Sidewalk on Madison + Jefferson Ave. Both north + south side__

6. Purpose of proposed activity: __Prayer vigil and demonstration speak out against abortion__

7. Estimated maximum number of participants. (If more than one park area is to be used, list numbers separately for each area.) __24 people__

*(The "White House Sidewalk" is the sidewalk between East and West Executive Avenues, on

8. Will cleanup people be provided for the area: _____ YES ⌐‾‾ NO. How will they be identified? _____

9. Person(s) in charge of activity. (One person must be listed as in charge of the activity. If different individuals are to be in charge of various activities at different locations, each must be listed.)

Person in charge: ___Rev. Patrick J. Mahoney___

Address: ___PO Box 9768   Washington, DC 20013___

Telephone Nos. (Include area code): Day __202.547.1735__ Evening __540.373.8094__

10. Plans for proposed activity. (Include a list of all principal speakers and the complete time schedule for the activity. Include proposed route of any march or parade, and plans for the orderly termination and dispersal of the proposed activity which might affect the regular flow of city traffic.) _____

___Have people praying and holding signs saying Abortion hurts women and Abortion kills children___

11. (a) List all props, stages, sound equipment, and other items to be provided by applicant/sponsor. (Include approximately number and size(s) of supports, standards, and handles; necessary medical/sanitary facilities and other similar items.) _____

(b) If boxes, crates, coffins, or similar items will be used, state whether they are to be carried opened or closed, their proposed size, the materials constructed from, and their proposed contents and use. _____

12. (a) Do you have any reason to believe or any information indicating that any individual, group, or organization might seek to disrupt the activity for which this application is submitted? _____ Yes _____ NO

(b) If "YES," list each such individual, group, or organization, with all information as to each, including address and telephone numbers.

_____

13. MARSHALS: (a) Will applicant/sponsor furnish marshals? (Required for waivers of numerical limitations and for demonstration activities held simultaneously on White House Sidewalk and Lafayette Park.) _____ YES ⌐‾‾ NO. If "YES," how many marshals will be furnished? _____

(b) Person(s) responsible for supervision of marshals (for each location):

Location(s): _____

Name(s): _____

Address(es): _____

Telephone Nos.: Day: _____ Evening: _____

(c)    List the functions the marshals are expected to perform: _____

_____

**QUESTIONS 14, 15 AND 16 MUST BE ANSWERED IF THIS IS AN APPLICATION FOR A WAIVER OF NUMERICAL LIMITATIONS. IF THIS IS NOT AN APPLICATION FOR A WAIVER, DO NOT ANSWER THESE QUESTIONS.**

14. What communications equipment will be provided to the marshals?  (Include the number of walkie-talkies, CB radios, bullhorns, public address systems, flashlights, etc.)

_____

_____

15. How will the marshals be identified? _____

16. State specifically the plans for ingress and egress of the participants to and from Lafayette Park including proposed sites for loading and unloading of buses, automobiles, or other forms of transportation which the participants are expected to use (supply chart if necessary). _____

_____

_____

**APPLICATION IS NOT VALID UNLESS SIGNED**

Director of Christian Defense Coalition
Position of person filing application

Signature of person filing application

PO Box 77168
Washington DC 20013
Address of person filing application

Rev. Patrick J Mahoney
Typed or printed name of person
Filing application

Telephone Nos. of person filing application (include area code):

Day: 202. 547-1735    Evening: 540. 373. 8099

Fax, 540. 373. 8147

# EXHIBIT 8

U.S. DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
National Capital Parks - Central
Division of Park Programs
1100 Ohio Drive, SW
Washington, D.C. 20242
Telephone: (202) 619-7225  FAX: (202) 401-2430



**National Park Service**

# FAX

| | | | |
|---|---|---|---|
| **To:** | James Matthew Henderson, Sr. | | Division of Park Programs |
| | Senior Attorney | | |
| **Fax:** | 202-546-9309 | **Pages:** | 9 (Not including cover sheet) |
| **Phone:** | | **Date:** | 04/07/04 |
| **Re:** | Response Letter and Public Gathering | **CC:** | |
| | Permit | | |
| | Re: Rev. Patrick Mahoney - Christian | | |
| | Defense Coalition | | |

☐ Urgent    ☑ For Review    ☐ Please Comment ☐ Please Reply    ☑ Please Recycle

● **Comments:**

Dear Mr. Henderson,

Please see the attached response letter and Public Gathering Permit.

Regards,



Ron Blain, Park Ranger

04/07/2004 12:11 FAX  202 401 2430    PARK PROG. PERMITS OFF    002/010



## United States Department of the Interior

NATIONAL PARK SERVICE

National Capital Region
1100 Ohio Drive, S.W.
Washington, D.C. 20242

IN REPLY REFER TO

APR -7 2004

Rev. Patrick Mahoney
Director, Christian Defense Coalition
P.O. Box 77168
Washington, D.C. 20013

Dear Rev. Mahoney:

This responds to your demonstration application 04-0754, received January 20, 2004, requesting the use of various park areas from 8:00 a.m. to 4:00 p.m. on April 25, 2004, to conduct a "prayer vigil and demonstration to speak out against abortion." Specifically, your initial application sought the use of Constitution Avenue's south sidewalks from 3rd to 21st Streets, for 100 to 2,000 participants to engage in prayer and "holding signs standing for the dignity of life and speaking against abortion." On February 2, 2004, you amended your application to request use of the National Mall's Madison Drive's south sidewalk, Jefferson Drive's north sidewalks, and the National Mall's 4th-14th Street east and west sidewalks. On March 17, 2004, you again amended your application to request use of the National Mall's Madison Drive's north sidewalk, Jefferson Drive's south sidewalks, along with an additional display of a four by eight foot hand-held helium-inflated "20 week old child." You also indicated that other groups organized by Mr. Randall Terry's Society For Truth And Justice as well as Silent No More could be joining your demonstration, which would then bring a total of between 3,000 to 5,000 participants, who you propose would line the sidewalks with hand-held signs "standing for the dignity of life and speaking against abortion."

The National Park Service reviews applications for demonstrations based on 36 C.F.R. §7.96(g). All applications are processed in order of receipt, and the use of a particular area is allocated in order of receipt of fully executed applications. And while most demonstration applications are "deemed granted" after 24 hours of receipt, all applications are subject to denial/revocation as set forth under 36 C.F.R. §7.96(g)(6), (4), (5).

To begin with, from discussions with you at our meetings and the changes made in your application, it is clear that your activities are a counter-demonstration directed toward the March For Women's Lives own large-scale demonstration which asserts "freedom of choice." And as you know, the March For Women's Lives submitted their demonstration application 04-0115 back on April 23, 2003 for use of the entire National Mall from 3rd to 14th Streets. The March For Women's Lives, organized by the Planned Parenthood Federation of America, NARAL Pro-Choice America, Feminist Majority, and the National Organization For Women, is expected by organizers to bring 750,000 participants and will need the Mall and its sidewalks for their event.

1

Indeed, the March For Women's Lives permitted demonstration will center on the National Mall with massive rallies from two separate stages along with a march across the Ellipse and various city streets.

We are pleased to issue the enclosed permit 04-0754, authorizing the use Federal park areas of Constitution Avenue's south sidewalks from 3rd to 21st Streets. Pursuant to 36 C.F.R. §7.96(g)(6), (4)(iii)(A)(B)(C), however, we must deny portions of your application for all of the National Mall's sidewalks from 4th-14th Streets: Madison Drive's north and south sidewalks, Jefferson Drive's north and south sidewalks, and the 4th-14th Street's east and west sidewalks.

As we detailed earlier, March For Women's Lives demonstration will be occurring on the National Mall from 3rd-14th Streets for the same times you requested. Further, given the size and scope of the March's permitted demonstration—along with its anticipated immense crowd of 750,000 participants--and based on our experience during the large demonstrations such as the 1997 Promise Keepers and 1995 Million Man March, the National Mall and its sidewalks cannot reasonably permit multiple occupancy.

Equally important, your proposed counter-demonstration consisting of between 100 to 2,000 participants and perhaps 3,000 to 5,000 participants would constitute an "unreasonable interference" of the March For Women's Lives permitted demonstration on the National Mall from 3rd-14th Street. This determination is fully consistent with past judicial decisions that confirm that just one or two counter-demonstrators unreasonably interfere with the permitted events of others on parkland. In Torossian v. Hayo, 45 F.Supp.2d 63 (D.D.C. 1999), appeal voluntarily dismissed No. 99-5127 (D.C. Cir. June 16, 1999), the District Court found that a two-person counter-demonstration "interfered with the activities carried on by the Million Man March pursuant to its Public Gathering Permit, and the Park Police acted well within their discretion in finding that such interference was unreasonable" to order them to move to another non-permitted location. Torossian, 45 F.Supp.2d at 8.

Indeed, the court in Torossian held that its situation was indistinguishable from Sanders v. United States, 518 F.Supp. 728 (D.D.C. 1981), aff'd without opinion 679 F.2d 262 (D.C. Cir. 1982). Sanders dealt with a lone demonstrator with signs who was inside an area under permit for the Christmas Pageant of Peace. The court in Torossian agreed with the court's analysis in Sanders, that a demonstrator "did not have a right to express his views by intruding into an area reserved for another event then in progress," and to the two governmental interests justifying preventing the interference by one demonstration into another group's permitted activity:

> The first concerns the safety, order, and convenience of those other citizens already participating in the preexisting event...
> Second, and more fundamentally, is the interest that citizens are guaranteed the right to participate in events or demonstrations of their own choosing without being subjected to interference by other citizens. A physical intrusion into another event for the purpose of interjecting one's own convictions or beliefs is by definition an

2

interference, regardless of how insubstantial or insignificant it might appear.

Torossian, 45 F.Supp.2d at 67, quoting Sanders, 518 F.Supp. at 729-30.

Torossian also confirmed that excluding a counter-demonstration from the permitted area of another is not a content-based regulation of speech. Rather, the court held that no judgment was being made regarding the counter-demonstrators' views "but rather the degree to which it interfered with the permitted activities of the Million Man March." And in the case of plaintiffs, the Park Police reasonably determined that this interference rose to the level of 'unreasonable interference' within the meaning of 36 C.F.R. § 7.96(g)(2)(i)." Moreover, citing Kroll v. United States Capitol Police, 847 F.2d 899 (D.C.Cir. 1988), the court found that the Park Police was enforcing a content-neutral National Park Service regulatory system, of which "[a] lawful and reasonable element of that permit scheme is the protection of a permitted demonstration's interest in being free of unreasonable interference from counter[-]demonstrators." Torossian, at 68.

Accordingly, beside that the Mall's sidewalks cannot reasonably permit multiple occupancy, we also believe that the counter-demonstration would interfere with the safety, order, and convenience of the participants to the preexisting March For Women's Lives demonstration on the National Mall. Moreover, Federal parkland in Washington, D.C. annually hosts more than 3,000 permitted demonstrations and special events, some of which attract degrees of passion that exceeds even the abortion debate. If counter-demonstrators were able to use areas under permit to another's activities, its singular and cumulative impacts would cause significant public safety problems, confusion and disorder that are beyond the ability of limited police resources to control, and would deny participants their right to participate in their own permitted event, without being subjected to the unreasonable interference of others.

As you may know, besides demonstrating on the National Mall, the March For Women's Lives plan to conduct a parade that will start from the 14th Street Kickoff Stage, north up 15th Street, west on Constitution Avenue and north on 17th Street to Ellipse's midpoint then east across the Ellipse, north on 15th Street, east on Pennsylvania Avenue and then back to their 3rd Street Main Stage. In that regard, consistent with National Park Service regulations, you remain free to express your views outside but adjacent to March For Women's Lives' permitted demonstration areas.

With the enclosed permit 04-0754, you are authorized the use Federal park areas of Constitution Avenue south sidewalks from 3rd to 21st Streets, which will allow your activity to be seen and heard by the March For Women's Lives. In the event you desire to use other available park areas, pursuant to 36 C.F.R. § 7.96(g)(4)(iii)(A) we hereby propose several alternative park sites: a portion of Freedom Plaza and the areas adjacent to the FBI building and Old Post Office Pavilion sidewalks, all of which are on Pennsylvania Avenue and are ample alternative channels of communication. Indeed, Randall Terry's Society For Truth And Justice own demonstration under permit for some of the Pennsylvania Avenue sidewalks confirm that counter-demonstrators

3

have the ability to see and be seen by the March. Finally, insofar as some District of Columbia regulated areas may afford additional alternative areas, you may wish to consider contacting the District of Columbia to request use of public spaces under their jurisdiction.

If you would like to discuss use of any of the proposed alternative park areas, please contact Park Ranger Ron Blain at (202) 619-7225. In the event you wish to contest the Park Service's partial denial, however, we consider the matter ripe for judicial adjudication.

Sincerely,

Richard Merryman
Chief, Division of Park Programs

Enclosure: NPS Permit 04-0754 for use of Federal park areas of Constitution Avenue south sidewalks from 3rd -21st Streets

cc: James M. Henderson, Sr., Esquire
    American Center For Law & Justice

4

# EXHIBIT 9



# United States Department of the Interior

IN REPLY REFER TO.

NATIONAL PARK SERVICE
National Capital Region
1100 Ohio Drive, S.W.
Washington, D.C. 20242

## PUBLIC GATHERING PERMIT

04-754                                    Date: April 6, 2004

In accordance with Park Regulations as contained in C.F.R., Title 36, Chapter 1, Section 7.96, permission is granted to conduct a public gathering to the following:

Person(s) and/or Organization(s): CHRISTIAN DEFENSE COALITION / GENERATION LIFE

Date(s): 04/25/2004                       To: 04/25/2004

Time: Starting: 07:00 am                  Ending: 4:00 pm

Location(s):    Constitution Avenue south sidewalk from 21st Street to 3rd Street

Purpose(s):    PRAYER VIGIL AND DEMONSTRATION TO SPEAK OUT AGAINST ABORTION

Anticipated Number of Participants:  5000

Person(s) in Charge:    REV. PATRICK J. MAHONEY

Address(es):    P.O. BOX 77168, WASHINGTON, DC 20013

Telephone Nos. Day:    202-547-1735

This permit is granted subject to the following conditions:

1. Permittee and all participants authorized therein must comply with all of the conditions of this permit and with all reasonable directions of the United States Park Police.

2. All sidewalks, walkways, and roadways must remain unobstructed to allow for the reasonable use of these areas by pedestrians, vehicles and other park visitors.

---Please see the attached additional information and conditions.

PERMIT # 04-754; ISSUED TO: REVEREND PATRICK J. MAHONEY
CHRISTIAN DEFENSE COALITION / GENERATION LIFE
CONSTITUTION AVENUE SOUTH SIDEWALKS (SEE "PERMITTED LOCATION(S)"
MARCH 25, 2004 (8:00 A.M. - 4:00 P.M.)

Page 2 of 4

3. All laws, rules and regulations applicable to the area covered by this permit remain in effect.

4. No fee may be collected, donation solicited, or commercial activity conducted. No items may be sold or offered for sale except for books, newspapers, leaflets, pamphlets, buttons and bumper stickers which contain a message related to your demonstration or special event. No other merchandise may be sold or offered for sale. A stand or structure used for the sale of permitted items may not exceed one table per site, which may be no larger than 2 1/2 feet by 8 feet or 4 feet by 4 feet. The dimensions of the sales site may not exceed 6 feet wide by 15 feet long by 6 feet high.

5. The area should be left in substantially the same condition as it was prior to the activities authorized herein, and all litter shall be placed in the trash containers provided.

6. This permit is applicable only for the use of the area designated above, and during the times designated above, or in any area as may hereafter be designated by the United States Park Police.

7. The use of sound amplification equipment, other than hand-portable sound amplification equipment to be used for crowd control purposes only, is prohibited on the White House Sidewalk (South 1600 Pennsylvania Avenue, NW., sidewalk between East Executive Avenue and West Executive Avenue). All sound amplification equipment shall be limited so that it will not unreasonably disturb nonparticipating persons in, or in the vicinity of, the area.

8. The National Park Service reserves the right to immediately revoke this permit at any time should it reasonably appear that the public gathering presents a clear and present danger to the public safety, good order or health, or if any conditions of this permit are violated.

Terry R. Carlstrom
Regional Director
National Capital Region

By:
Richard E. Merryman
Chief, Division of Park Programs
National Capital Parks-Central

PERMIT # 04-754; ISSUED TO: REVEREND PATRICK J. MAHONEY
CHRISTIAN DEFENSE COALITION / GENERATION LIFE
CONSTITUTION AVENUE SOUTH SIDEWALKS (SEE "PERMITTED LOCATIONS")
MARCH 25, 2004 (8:00 A.M. - 4:00 P.M.)

Page 3 of 4

Event Overview:

The stated purpose of this demonstration, with an estimated attendance from 100 to 5,000 participants, is a "*Prayer Vigil and demonstration to speak out against abortion*". Participants plan to line the sidewalks in the permitted areas, displaying hand-held signs and possibly a 4-foot by 8-foot helium-filled display.

Permitted Locations:

South sidewalk of Constitution Avenue, NW, between 21st Street and eastward to intersection with Pennsylvania Avenue, west of 4th Street, NW, and, the south sidewalk of Constitution Avenue on Reservation 553.    (*Please see the attached map indicating permitted area*)

Permitted Set-up:

♦ Hand-held signs
♦ One (1) 4-foot by 8-foot helium-filled display (See conditions #13 & #14, below)

Non-Permitted Locations:

Pursuant to the attached letter dated April 7, 2004, your request for the use of the National Mall sidewalks is DENIED.

Additional Site-Specific Conditions

9) Additional Permits: The Permittee is responsible for obtaining the necessary permissions and/or permits from the Metropolitan Police Department at (202) 727-4635, or from other federal, state or local agencies or departments for the use of public lands other than those under the jurisdiction of the National Park Service.

10) The Permittee is responsible for providing all necessary equipment/objects to conduct this activity. All equipment must be removed from the park immediately following the conclusion of the event. Items left in the park will be considered abandoned property and will not be the responsibility of the National Park Service.

11) Unloading and loading of vehicles transporting portable equipment, materials and supplies that can be hand-carried or carted must take place from the street curb only. All other vehicles must park in designated, available public spaces.

12) The Permittee is asked to provide personnel to collect and dispose of any trash and debris generated as a result of this activity.

13) No attachments may be made to trees, shrubbery or other plantings, fences, benches, light standards, or any other park landscape element.

PERMIT # 04-754; ISSUED TO: REVEREND PATRICK J. MAHONEY
CHRISTIAN DEFENSE COALITION / GENERATION LIFE
CONSTITUTION AVENUE SOUTH SIDEWALKS (SEE "PERMITTED LOCATIONS")
MARCH 25, 2004 (8:00 A.M. - 4:00 P.M.)

Page 4 of 4

14) No balloons of any type, glass containers, or alcoholic beverages are generally    ·
permitted on parkland.

NOTE: This permit authorizes the use of one 4-foot by 8-foot helium-filled display.
Special consideration must be given to assuring that the display is properly tethered
and secured by assigned individuals at all times. (Also see condition #13, above).

15) Contact Park Ranger Ron Blain, National Capital Parks-Central, (202) 619-7225, with
any questions concerning activity logistics.

16) Contact Sgt. Roxanne Brown-Ankney, United States Park Police, (202) 610-7092, with
questions regarding United States Park Police logistics.

17) A complete copy of this permit must be retained on-site at all times by the Permittee while
operating under the authority granted.

# Permit 04-754, Christian Defense Coalition / Generation Life

## Permitted Locations



Constitution Avenue South Sidewalk

Reservation 553

04/07/2004 12:12 FAX 202 401 2430    PARK PRO. PERMITS    @ 010/010

Case 1:04-cv-00630-GK    Document 2    Filed 04/20/04    Page 51 of 69

# EXHIBIT 10

U.S. DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
National Capital Parks - Central
Division of Park Programs
1100 Ohio Drive, SW
Washington, D.C. 20242
Telephone: (202) 619-7225 FAX. (202) 401-2430





# FAX

| To: | James Matthew Henderson, Sr. | | Ron Blain |
|---|---|---|---|
| | Senior Attorney | | |
| **Fax:** | 202-546-9309 | **Pages:** | 13 (Not including cover sheet) |
| **Phone:** | | **Date:** | 04/15/04 |
| **Re:** | Response letter and attachments | **CC:** | |

☐ Urgent    ☑ For Review    ☐ Please Comment  ☐ Please Reply    ☑ **Please Recycle**

● **Comments:**

Dear Mr. Henderson,

Letter and enclosures regarding Christian Defense Coalition application 04-1227 are attached.

Regards,



Ron Blain, Park Ranger
Division of Park Programs



# United States Department of the Interior

NATIONAL PARK SERVICE
National Capital Region
1100 Ohio Drive, S.W.
Washington, D.C. 20242

IN REPLY REFER TO:

APR 15 2004

Rev. Patrick Mahoney
Director, Christian Defense Coalition
P.O. Box 77168
Washington. D.C. 20013

Dear Rev. Mahoney:

This responds to your demonstration application 04-1227 received April 9, 2004, requesting the use of Madison and Jefferson Drives' north and south sidewalks on the Mall from 10:00 a.m. to 5:00 p.m. on April 25, 2004, for a "prayer vigil and demonstration to speak out against abortion." In what is now your second application, you state that you will have up to 24 participants who will be "praying and holding signs saying that abortion hurts women and abortion kills children."

The National Park Service reviews applications for demonstrations based on 36 C.F.R. §7.96(g). All applications are processed in order of receipt, and the use of a particular area is allocated in order of receipt of fully executed applications. And while most demonstration applications are "deemed granted" after 24 hours of receipt, all applications are subject to denial/revocation as set forth under 36 C.F.R. §7.96(g)(6), (4), (5). Further, 36 C.F.R. §7.96(g)(2)(i) requires that even for a small-group demonstration that does not require a permit, their activity must not "unreasonably interfere with other demonstrations and special events" and otherwise comply with other conditions required for the issuance of a permit.

As you know, your second application 04-1227 seeks a permit to engage in an anti-abortion counter-demonstration directly within and amidst the March For Women's Lives own, earlier-filed, large-scale demonstration that asserts "freedom of choice." In your first application 04-0754, you sought to engage in an anti-abortion counter-demonstration with between 100 to 5,000 participants. As we explained in our letter to you dated April 7, 2004, a copy of which is enclosed and incorporated by reference. we detailed that the March For Women's Lives, organized by the Planned Parenthood Federation of America. NARAL Pro-Choice America, Feminist Majority, and the National Organization For Women, is expected to bring 750,000 participants for their demonstration that will be centered on the National Mall with massive rallies from two separate stages, along with a march across the Ellipse and various city streets.

For your first application 04-0754, while the National Park Service granted you permit 04-0754 for your use Federal park areas of Constitution Avenue's south sidewalks from 3rd to 21st Streets, pursuant to 36 C.F.R. §7.96(g)(6), (4)(iii)(A)(B)(C) we denied other portions of your application seeking the use of the Madison and Jefferson Drives' north and south sidewalks, the National Mall's sidewalks from 4th-14th Streets, and the 4th-14th Street's east and west sidewalks.

1

For your second demonstration application 04-1227, you are again seeking use of the Madison and Jefferson Drives north and south sidewalks on the Mall, which is a repetition of your first application 04-0754, except with fewer participants. Pursuant to 36 C.F.R. §7.96(g)(6), (4)(iii)(A)(B)(C), however, your request is again denied. As we detailed in our letter to you dated April 7, 2004, the March For Women's Lives demonstration will be occurring on the National Mall and its sidewalks from 3rd-14th Streets at the same time you requested. And given the size and scope of the March's permitted demonstration--along with its anticipated immense crowd of 750,000 participants--and based on our experience during the large demonstrations such as the 1997 Promise Keepers and 1995 Million Man March, the National Mall's sidewalks which is under permit to the March cannot reasonably permit multiple occupancy.

Equally important, your proposed counter-demonstration--even reduced in your second application to 24 participants in contrast to your first application of 100-5,000 participants-- would still constitute an "unreasonable interference" of the March For Women's Lives permitted demonstration that will be on the National Mall and its sidewalks from 3rd-14th Street. As we detailed earlier, this determination is fully consistent with past judicial decisions that confirm that just one or two counter-demonstrators unreasonably interfere with the permitted events of others on parkland. In Torossian v. Hayo, 45 F.Supp.2d 63 (D.D.C. 1999), appeal voluntarily dismissed No. 99-5127 (D.C. Cir. June 16, 1999), the District Court found that a two-person counter-demonstration "interfered with the activities carried on by the Million Man March pursuant to its Public Gathering Permit, and the Park Police acted well within their discretion in finding that such interference was unreasonable" to order them to move to another non-permitted location. Torossian, 45 F.Supp.2d at 8.

Indeed, the court in Torossian held that its situation was indistinguishable from Sanders v. United States, 518 F.Supp. 728 (D.D.C. 1981), aff'd without opinion 679 F.2d 262 (D.C. Cir. 1982).
Sanders dealt with a lone demonstrator with signs who was inside an area under permit for the Christmas Pageant of Peace. The court in Torossian agreed with the court's analysis in Sanders, that a demonstrator "did not have a right to express his views by intruding into an area reserved for another event then in progress," and to the two governmental interests justifying preventing the interference by one demonstration into another group's permitted activity:

> The first concerns the safety, order, and convenience of those other citizens already participating in the preexisting event...
> Second, and more fundamentally, is the interest that citizens are guaranteed the right to participate in events or demonstrations of their own choosing without being subjected to interference by other citizens. A physical intrusion into another event for the purpose of interjecting one's own convictions or beliefs is by definition an interference, regardless of how insubstantial or insignificant it might appear.

2

Torossian, 45 F.Supp.2d at 67, quoting Sanders, 518 F.Supp. at 729-30.

Torossian also confirmed that excluding a counter-demonstration from the permitted area of another is not a content-based regulation of speech. Rather, the court held that no judgment was being made regarding the counter-demonstrators' views "but rather the degree to which it interfered with the permitted activities of the Million Man March." And in the case of plaintiffs, the Park Police reasonably determined that this interference rose to the level of 'unreasonable interference' within the meaning of 36 C.F.R. § 7.96(g)(2)(i)." Moreover, citing Kroll v. United States Capitol Police, 847 F.2d 899 (D.C.Cir. 1988), the court found that the Park Police was enforcing a content-neutral National Park Service regulatory system, of which "[a] lawful and reasonable element of that permit scheme is the protection of a permitted demonstration's interest in being free of unreasonable interference from counter[-]demonstrators." Torossian, at 68.

Indeed, as the Supreme Court recently stated "[r]egulations of the use of a public forum that ensure the safety and convenience of the people are not 'inconsistent with civil liberties but ... [are] one of the means of safeguarding the good order upon which [civil liberties] ultimately depend.'" Thomas v. Chicago Park District, 524 U.S. 316, 323 (2002), quoting Cox v. New Hampshire, 312 U.S. 569, 574 (1941).

Accordingly, beside that these Mall's sidewalks are already under permit to the March and still cannot reasonably permit multiple occupancy, we also believe that your counter-demonstration would still interfere with the safety, order, and convenience of the participants to the March For Women's Lives own demonstration. Moreover, Federal parkland in Washington, D.C. annually hosts more than 3,000 permitted demonstrations and special events, some of which attract degrees of passion that exceeds even the abortion debate. If counter-demonstrators were able to use areas under permit to another's activities, its singular and cumulative impacts would cause significant public safety problems, confusion and disorder that are beyond the ability of limited police resources to control, and would deny participants their right to participate in their own permitted event without being subjected to the unreasonable interference of others.

As you know, you are already authorized in permit 04-0754 the use Federal park areas of Constitution Avenue south sidewalks from 3rd to 21st Streets, which will allow your activity to be seen and heard by the March For Women's Lives. Consistent with our earlier letter, in the event you desire to use other available park areas and pursuant to 36 C.F.R. § 7.96(g)(4)(iii)(A) we again propose the same alternative park sites we earlier offered you: a portion of Freedom Plaza and the areas adjacent to the FBI building and Old Post Office Pavilion sidewalks, all of which are on Pennsylvania Avenue and are ample alternative channels of communication. Indeed, Randall Terry's Society For Truth And Justice own demonstration, under permit 04-563 for some of the Pennsylvania Avenue sidewalks, confirm that counter-demonstrators have the ability to see and be seen by the March. Finally, insofar as some District of Columbia regulated areas may afford additional alternative areas, you may wish to consider contacting the District of Columbia to request use of public spaces under their jurisdiction.

If you would like to discuss use of any of the proposed alternative park areas, please contact Park Ranger Ron Blain at (202) 619-7225. In the event you wish to contest the Park Service's second denial of a permit for a counter-demonstration on the Mall sidewalks that is within the March For Women's Lives' demonstration, we consider the matter ripe for judicial adjudication.

Sincerely,

Richard Merryman
Chief, Division of Park Programs

Enclosure: NPS letter to Rev. Mahoney dated April 7, 2004 with permit 04-0754

cc: James M. Henderson, Sr., Esquire
    American Center For Law & Justice

4



# United States Department of the Interior

NATIONAL PARK SERVICE
National Capital Region
1100 Ohio Drive, S.W.
Washington, D.C. 20242

IN REPLY REFER TO

APR - 7 2004

Rev. Patrick Mahoney
Director, Christian Defense Coalition
P.O. Box 77168
Washington, D.C. 20013

Dear Rev. Mahoney:

This responds to your demonstration application 04-0754, received January 20, 2004, requesting the use of various park areas from 8:00 a.m. to 4:00 p.m. on April 25, 2004, to conduct a "prayer vigil and demonstration to speak out against abortion." Specifically, your initial application sought the use of Constitution Avenue's south sidewalks from 3rd to 21st Streets, for 100 to 2,000 participants to engage in prayer and "holding signs standing for the dignity of life and speaking against abortion." On February 2, 2004, you amended your application to request use of the National Mall's Madison Drive's south sidewalk, Jefferson Drive's north sidewalks, and the National Mall's 4th-14th Street east and west sidewalks. On March 17, 2004, you again amended your application to request use of the National Mall's Madison Drive's north sidewalk, Jefferson Drive's south sidewalks, along with an additional display of a four by eight foot hand-held helium-inflated "20 week old child." You also indicated that other groups organized by Mr. Randall Terry's Society For Truth And Justice as well as Silent No More could be joining your demonstration, which would then bring a total of between 3,000 to 5,000 participants, who you propose would line the sidewalks with hand-held signs "standing for the dignity of life and speaking against abortion."

The National Park Service reviews applications for demonstrations based on 36 C.F.R. §7.96(g). All applications are processed in order of receipt, and the use of a particular area is allocated in order of receipt of fully executed applications. And while most demonstration applications are "deemed granted" after 24 hours of receipt, all applications are subject to denial/revocation as set forth under 36 C.F.R. §7.96(g)(6), (4), (5).

To begin with, from discussions with you at our meetings and the changes made in your application, it is clear that your activities are a counter-demonstration directed toward the March For Women's Lives own large-scale demonstration which asserts "freedom of choice." And as you know, the March For Women's Lives submitted their demonstration application 04-0115 back on April 23, 2003 for use of the entire National Mall from 3rd to 14th Streets. The March For Women's Lives, organized by the Planned Parenthood Federation of America, NARAL Pro-Choice America, Feminist Majority, and the National Organization For Women, is expected by organizers to bring 750,000 participants and will need the Mall and its sidewalks for their event.

1

Indeed, the March For Women's Lives permitted demonstration will center on the National Mall with massive rallies from two separate stages along with a march across the Ellipse and various city streets.

We are pleased to issue the enclosed permit 04-0754, authorizing the use Federal park areas of Constitution Avenue's south sidewalks from 3rd to 21st Streets. Pursuant to 36 C.F.R. §7.96(g)(6), (4)(iii)(A)(B)(C), however, we must deny portions of your application for all of the National Mall's sidewalks from 4th-14th Streets: Madison Drive's north and south sidewalks, Jefferson Drive's north and south sidewalks, and the 4th-14th Street's east and west sidewalks.

As we detailed earlier, March For Women's Lives demonstration will be occurring on the National Mall from 3rd-14th Streets for the same times you requested. Further, given the size and scope of the March's permitted demonstration–along with its anticipated immense crowd of 750,000 participants--and based on our experience during the large demonstrations such as the 1997 Promise Keepers and 1995 Million Man March, the National Mall and its sidewalks cannot reasonably permit multiple occupancy.

Equally important, your proposed counter-demonstration consisting of between 100 to 2,000 participants and perhaps 3,000 to 5,000 participants would constitute an "unreasonable interference" of the March For Women's Lives permitted demonstration on the National Mall from 3rd-14th Street. This determination is fully consistent with past judicial decisions that confirm that just one or two counter-demonstrators unreasonably interfere with the permitted events of others on parkland. In Torossian v. Hayo, 45 F.Supp.2d 63 (D.D.C. 1999), appeal voluntarily dismissed No. 99-5127 (D.C. Cir. June 16, 1999), the District Court found that a two-person counter-demonstration "interfered with the activities carried on by the Million Man March pursuant to its Public Gathering Permit, and the Park Police acted well within their discretion in finding that such interference was unreasonable" to order them to move to another non-permitted location. Torossian, 45 F.Supp.2d at 8.

Indeed, the court in Torossian held that its situation was indistinguishable from Sanders v. United States, 518 F.Supp. 728 (D.D.C. 1981), aff'd without opinion 679 F.2d 262 (D.C. Cir. 1982). Sanders dealt with a lone demonstrator with signs who was inside an area under permit for the Christmas Pageant of Peace. The court in Torossian agreed with the court's analysis in Sanders, that a demonstrator "did not have a right to express his views by intruding into an area reserved for another event then in progress," and to the two governmental interests justifying preventing the interference by one demonstration into another group's permitted activity:

> The first concerns the safety, order, and convenience of those other
> citizens already participating in the preexisting event...
> Second, and more fundamentally, is the interest that citizens are
> guaranteed the right to participate in events or demonstrations of
> their own choosing without being subjected to interference by other
> citizens. A physical intrusion into another event for the purpose of
> interjecting one's own convictions or beliefs is by definition an

2

interference, regardless of how insubstantial or insignificant it might appear.

Torossian, 45 F.Supp.2d at 67, quoting Sanders, 518 F.Supp. at 729-30.

Torossian also confirmed that excluding a counter-demonstration from the permitted area of another is not a content-based regulation of speech. Rather, the court held that no judgment was being made regarding the counter-demonstrators' views "but rather the degree to which it interfered with the permitted activities of the Million Man March." And in the case of plaintiffs, the Park Police reasonably determined that this interference rose to the level of 'unreasonable interference' within the meaning of 36 C.F.R. § 7.96(g)(2)(i)." Moreover, citing Kroll v. United States Capitol Police, 847 F.2d 899 (D.C.Cir. 1988), the court found that the Park Police was enforcing a content-neutral National Park Service regulatory system, of which "[a] lawful and reasonable element of that permit scheme is the protection of a permitted demonstration's interest in being free of unreasonable interference from counter[-]demonstrators." Torossian, at 68.

Accordingly, beside that the Mall's sidewalks cannot reasonably permit multiple occupancy, we also believe that the counter-demonstration would interfere with the safety, order, and convenience of the participants to the preexisting March For Women's Lives demonstration on the National Mall. Moreover, Federal parkland in Washington, D.C. annually hosts more than 3,000 permitted demonstrations and special events, some of which attract degrees of passion that exceeds even the abortion debate. If counter-demonstrators were able to use areas under permit to another's activities, its singular and cumulative impacts would cause significant public safety problems, confusion and disorder that are beyond the ability of limited police resources to control, and would deny participants their right to participate in their own permitted event, without being subjected to the unreasonable interference of others.

As you may know, besides demonstrating on the National Mall, the March For Women's Lives plan to conduct a parade that will start from the 14th Street Kickoff Stage, north up 15th Street, west on Constitution Avenue and north on 17th Street to Ellipse's midpoint then east across the Ellipse, north on 15th Street, east on Pennsylvania Avenue and then back to their 3rd Street Main Stage. In that regard, consistent with National Park Service regulations, you remain free to express your views outside but adjacent to March For Women's Lives' permitted demonstration areas.

With the enclosed permit 04-0754, you are authorized the use Federal park areas of Constitution Avenue south sidewalks from 3rd to 21st Streets, which will allow your activity to be seen and heard by the March For Women's Lives. In the event you desire to use other available park areas, pursuant to 36 C.F.R. § 7.96(g)(4)(iii)(A) we hereby propose several alternative park sites: a portion of Freedom Plaza and the areas adjacent to the FBI building and Old Post Office Pavilion sidewalks, all of which are on Pennsylvania Avenue and are ample alternative channels of communication. Indeed, Randall Terry's Society For Truth And Justice own demonstration under permit for some of the Pennsylvania Avenue sidewalks confirm that counter-demonstrators

3

have the ability to see and be seen by the March. Finally, insofar as some District of Columbia regulated areas may afford additional alternative areas, you may wish to consider contacting the District of Columbia to request use of public spaces under their jurisdiction.

If you would like to discuss use of any of the proposed alternative park areas, please contact Park Ranger Ron Blain at (202) 619-7225. In the event you wish to contest the Park Service's partial denial, however, we consider the matter ripe for judicial adjudication.

Sincerely,

Richard Merryman
Chief, Division of Park Programs

Enclosure: NPS Permit 04-0754 for use of Federal park areas of Constitution Avenue south sidewalks from 3rd -21st Streets

cc: James M. Henderson, Sr., Esquire
    American Center For Law & Justice

4



# United States Department of the Interior

NATIONAL PARK SERVICE
National Capital Region
1100 Ohio Drive, S.W.
Washington, D.C. 20242

IN REPLY REFER TO

## PUBLIC GATHERING PERMIT

04-754                                           Date:  April 6, 2004

In accordance with Park Regulations as contained in C.F.R., Title 36, Chapter 1, Section 7.96, permission is granted to conduct a public gathering to the following:

Person(s) and/or Organization(s): CHRISTIAN DEFENSE COALITION / GENERATION LIFE

Date(s): 04/25/2004                          To: 04/25/2004

Time:  Starting: 07:00 am                    Ending: 4:00 pm

Location(s):      Constitution Avenue south sidewalk from 21st Street to 3rd Street

Purpose(s):      PRAYER VIGIL AND DEMONSTRATION TO SPEAK OUT AGAINST
                 ABORTION

Anticipated Number of Participants:  5000

Person(s) in Charge:    REV. PATRICK J. MAHONEY

Address(es):            P.O. BOX 77168, WASHINGTON, DC 20013

Telephone Nos. Day:     202-547-1735

This permit is granted subject to the following conditions:

1. Permittee and all participants authorized therein must comply with all of the conditions of this permit and with all reasonable directions of the United States Park Police.

2. All sidewalks, walkways, and roadways must remain unobstructed to allow for the reasonable use of these areas by pedestrians, vehicles and other park visitors.

---Please see the attached additional information and conditions.

PERMIT # 04-754; ISSUED TO: REVEREND PATRICK J. MAHONEY
CHRISTIAN DEFENSE COALITION / GENERATION LIFE
CONSTITUTION AVENUE SOUTH SIDEWALKS (SEE "PERMITTED LOCATION(S)"
MARCH 25, 2004 (8:00 A.M. - 4:00 P.M.)

### Page 2 of 4

3. All laws, rules and regulations applicable to the area covered by this permit remain in effect.

4. No fee may be collected, donation solicited, or commercial activity conducted. No items may be sold or offered for sale except for books, newspapers, leaflets, pamphlets, buttons and bumper stickers which contain a message related to your demonstration or special event. No other merchandise may be sold or offered for sale. A stand or structure used for the sale of permitted items may not exceed one table per site, which may be no larger than 2 1/2 feet by 8 feet or 4 feet by 4 feet. The dimensions of the sales site may not exceed 6 feet wide by 15 feet long by 6 feet high.

5. The area should be left in substantially the same condition as it was prior to the activities authorized herein, and all litter shall be placed in the trash containers provided.

6. This permit is applicable only for the use of the area designated above, and during the times designated above, or in any area as may hereafter be designated by the United States Park Police.

7. The use of sound amplification equipment, other than hand-portable sound amplification equipment to be used for crowd control purposes only, is prohibited on the White House Sidewalk (South 1600 Pennsylvania Avenue, NW., sidewalk between East Executive Avenue and West Executive Avenue). All sound amplification equipment shall be limited so that it will not unreasonably disturb nonparticipating persons in, or in the vicinity of, the area.

8. The National Park Service reserves the right to immediately revoke this permit at any time should it reasonably appear that the public gathering presents a clear and present danger to the public safety, good order or health, or if any conditions of this permit are violated.

Terry R. Carlstrom
Regional Director
National Capital Region

By:
Richard E. Merryman
Chief, Division of Park Programs
National Capital Parks-Central

PERMIT # 04-754; ISSUED TO: REVEREND PATRICK J. MAHONEY
CHRISTIAN DEFENSE COALITION / GENERATION LIFE
CONSTITUTION AVENUE SOUTH SIDEWALKS (SEE "PERMITTED LOCATIONS")
MARCH 25, 2004 (8:00 A.M. - 4:00 P.M.)

Page 3 of 4

**Event Overview:**
The stated purpose of this demonstration, with an estimated attendance from 100 to 5,000
participants, is a *"Prayer Vigil and demonstration to speak out against abortion"*.
Participants plan to line the sidewalks in the permitted areas, displaying hand-held signs
and possibly a 4-foot by 8-foot helium-filled display.

**Permitted Locations:**
South sidewalk of Constitution Avenue, NW, between 21st Street and eastward to
intersection with Pennsylvania Avenue, west of 4th Street, NW, and, the south sidewalk of
Constitution Avenue on Reservation 553.    *(Please see the attached map indicating
permitted area)*

**Permitted Set-up:**
- Hand-held signs
- One (1) 4-foot by 8-foot helium-filled display (See conditions #13 & #14, below)

**Non-Permitted Locations:**
Pursuant to the attached letter dated April 7, 2004, your request for the use of the National
Mall sidewalks is DENIED.

**Additional Site-Specific Conditions**

9) Additional Permits: The Permittee is responsible for obtaining the necessary
   permissions and/or permits from the Metropolitan Police Department at **(202) 727-
   4635**, or from other federal, state or local agencies or departments for the use of public
   lands other than those under the jurisdiction of the National Park Service.

10) The Permittee is responsible for providing all necessary equipment/objects to conduct this
    activity. All equipment must be removed from the park immediately following the
    conclusion of the event. Items left in the park will be considered abandoned property and
    will not be the responsibility of the National Park Service.

11) Unloading and loading of vehicles transporting portable equipment, materials and
    supplies that can be hand-carried or carted must take place from the street curb only.
    All other vehicles must park in designated, available public spaces.

12) The Permittee is asked to provide personnel to collect and dispose of any trash and
    debris generated as a result of this activity.

13) No attachments may be made to trees, shrubbery or other plantings, fences, benches,
    light standards, or any other park landscape element.

04/15/2004 16:26 FAX  202 401 3430      PARK PROG  PERMITS OFF                    ☑013

**PERMIT # 04-754;** ISSUED TO: REVEREND PATRICK J. MAHONEY
CHRISTIAN DEFENSE COALITION / GENERATION LIFE
CONSTITUTION AVENUE SOUTH SIDEWALKS (SEE "PERMITTED LOCATIONS")
MARCH 25, 2004 (8:00 A.M. - 4:00 P.M.)

## Page 4 of 4

14) No balloons of any type, glass containers, or alcoholic beverages are generally
permitted on parkland.

> NOTE: This permit authorizes the use of one 4-foot by 8-foot helium-filled display.
> Special consideration must be given to assuring that the display is properly tethered
> and secured by assigned individuals at all times. (Also see condition #13, above).

15) Contact Park Ranger Ron Blain, National Capital Parks-Central, (202) 619-7225, with
any questions concerning activity logistics.

16) Contact Sgt. Roxanne Brown-Ankney, United States Park Police, (202) 610-7092, with
questions regarding United States Park Police logistics.

17) A complete copy of this permit must be retained on-site at all times by the Permittee while
operating under the authority granted.

04/15/2004 16:26 FAX  202 401 3430      PARK PROG  PERMITS OFF

## Permit 04-754, Christian Defense Coalition / Generation Life

### Permitted Locations



Case 1:04-cv-00630-GK    Document 2    Filed 04/20/04    Page 66 of 69    ☑014

# EXHIBIT 11

04/16/2004 16:31 FAX  202 401 2430        PARK PROG. PERMITS OFF.              ☑001/002

U.S. DEPARTMENT OF THE INTERIOR
NATIONAL PARK SERVICE
National Capital Parks - Central
Division of Park Programs
1100 Ohio Drive, SW
Washington, D.C. 20242
Telephone: (202) 619-7225  FAX: (202) 401-2430





# FAX

| | | | |
|---|---|---|---|
| **To:** | James Matthew Henderson, Sr. | | Ron Blain |
| | Senior Attorney | | |
| **Fax:** | 202-546-9309 | **Pages:** | 1 (Not including cover sheet) |
| **Phone:** | | **Date:** | 04/16/04 |
| **Re:** | Follow-up letter | **CC:** | |

☐ Urgent    ☑ **For Review**    ☐ **Please Comment** ☐ **Please Reply**    ☑ **Please Recycle**

● **Comments:**

Attached, please find a letter dated April 16, 2004.

Regards,

Ron Blain, Park Ranger



# United States Department of the Interior

NATIONAL PARK SERVICE

National Capital Region
1100 Ohio Drive, S.W.
Washington, D.C. 20242

IN REPLY REFER TO

APR 16 2004

Rev. Patrick Mahoney
Director, Christian Defense Coalition
P.O. Box 77168
Washington, D.C. 20013

Dear Rev. Mahoney:

This follows up on our letters dated April 7, 2004 on application 04-0754 and our letter dated 15, 2004 on application 04-1227. Specifically, pursuant to 36 C.F.R. § 7.96(g)(4)(iii)(A) we propose an additional alternative park site for your counter-demonstration: the 4th Street west side sidewalk that is north of the Madison Drive north sidewalk. If you would like to discuss use of this area, or any of the other alternative park areas we earlier proposed, please contact Park Ranger Ron Blain at (202) 619-7225.

Sincerely,

For Richard Merryman
Chief, Division of Park Programs

cc: James M. Henderson, Sr., Esquire
    American Center For Law & Justice