**PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., Plaintiffs v. NATIONAL PARK SERVICE, Defendant**

**Civil Action No. 89-0939**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**1989 U.S. Dist. LEXIS 3582**

**April 7, 1989, Decided and Filed**

**OPINIONBY:** [*1]

PENN

**OPINION:**

MEMORANDUM

JOHN GARRETT PENN, UNITED STATES DISTRICT JUDGE

The plaintiffs are groups and individuals who contend that they will be injured by the decision of the National Park Service (NPS), to issue a permit to the American Coalition for Life (Coalition), "to conduct an anti-abortion demonstration on the Mall in Washington, D.C. at the same time and place as a previously permitted pro-choice march and rally in which plaintiffs will be participating." Complaint at 1-2.

The complaint was filed on April 6, 1989, together with plaintiffs' motion for a temporary restraining order in which the plaintiffs seek to have the Court direct "the Director of defendant National Park Service to revoke, effective 11:59 p.m., April 8, 1989, Permit No. 89-399 granted to the [Coalition] for a demonstration on public property west of the Capitol Reflecting Pool, pending further order of this Court." Plaintiffs' Application for a Temporary Restraining Order. The March sponsored by plaintiffs is to be held on April 9, 1989.

In view of the time constraints, the Court held a hearing on the application for a temporary restraining order on April 7, 1989. Pursuant to the agreement by the parties, the [*2] application for a temporary restraining order was converted into a motion for a preliminary injunction.

I

Very briefly, the underlying facts are as follows: The plaintiffs are the Planned Parenthood Federal of America, Inc. (PPFA); Faye Wattleton, president of PPFA; Catholics for Free Choice; the American Jewish Congress (AJC); Americans for Religious Liberty, Inc. (ARL); and Judith N. Herr and Lori F. Morris, residents of Maryland who intend to participate in the March scheduled for April 9, 1989. The National Organization for Women (NOW) applied for a permit from the NPS.

On or about October 19, 1988, NOW applied for a permit from NPS in connection with the March scheduled for the Mall on April 9, 1989. Complaint par. 8, Exhibit A. Plaintiffs believe that, on a date prior to February 28, 1989, NPS issued Permit No. 89-152 to NOW. n1 The Coalition applied for a permit February 7, 1989, and on February 28, 1989, NPS issued Permit No. 89-399 to the Coalition. Complaint par.1 and Exhibit C. That permit provides in part that the Coalition cannot use amplified sound devices on April 9, 1989, the date of the NOW March. Complaint Exhibit C. n2

n1 Plaintiffs state, however, that they have been unable to obtain a copy of the NOW permit. They reason that the NOW application, which bears the number, "89-152" was granted prior to the Coalition permit which bears the number "89-399." Plaintiffs' Memorandum of Points and Authorities, n. 1. Plaintiffs have attached a copy of the Coalition's application for a permit (Complaint Exhibit B) and that organization's permit (Complaint Exhibit C). [*3]

Attachment "A"
Civil No. 04-630 GK

1989 U.S. Dist. LEXIS 3582, *

n2 The last two lines of Permit No. 89-399 providing, in part, that: "No amplified sound devices on April 9" does not appear in the copy of Permit No. 89-399 attached to the complaint. Counsel for the plaintiffs furnished the Court with the complete page at the time of the argument on the application.

Plaintiffs state that participants in the March will assemble near the Washington Monument and that beginning at noon on April 9, 1989, they will follow a route that will eventually take them to the west side of the Capitol, where a rally, including speeches and singing, will occur continuing through the afternoon. Complaint par. 9. They anticipate that the March will attract more than 200,000 people, and further that, because of the number of participants, the crowd "will not be able to fit into the Capitol Grounds and will overflow to the west of the Capitol Grounds, across First Street, around Grant Statue and the Reflecting Pool, and into the area between the Pool and Third Street." Complaint par. 10.

Under the terms of the permit applied for and issued to the Coalition, 4,400 wooden crosses, 16" x 24", were erected on the Mall on April 5, 1989, and are to remain in place through [*4] April 10, 1989. Complaint par. 12. According to a leaflet distributed by the Coalition, it will hold a "service" from Noon to 4 p.m. on April 9, 1989 during the same period as the March and subsequent rally, and the Coalition's "service" "will involve speeches and singing and is expected to be attended by several hundred persons." Complaint par. 13 and Exhibit D.

Plaintiffs complain that the area assigned to the Coalition by its permit, is adjacent to the area assigned to NOW, and that "the north side of the Coalition's display of crosses is only a few feet from Pennsylvania Avenue, which is part of the path of the March, and the east side is a short city block from the West Grounds of the Capitol, where the rally following the March will be centered." Complaint par. 14.

Plaintiffs state that when the existence of the permit issued to the Coalition came to their attention, they "promptly notified the Director of the [NPS] on April 5, 1989, to express plaintiffs' concerns regarding the Coalition permit," but that a response has not been received. Complaint par. 15.

Plaintiffs contend that the conjunction of the Coalition's site with the previously permitted route and rally site of [*5] the plaintiffs' March will result in multiple occupancy of the same area and will interfere with the ability of the individual plaintiffs to participate in the March. Complaint par. 16. They complain further that the decision of NPS to issue the permit to the Coalition to include April 9, 1989, violates NPS's regulations, 36 C.F.R. § 2.51(c)(1), "because the activities previously authorized at the Coalition's site by the [NPS's] permit to NOW do not reasonably allow multiple occupancy of the part of the Mall occupied by the Coalition," that it will "interfere with the ability of the individual plaintiffs who participate to see and hear without obstruction or disruption and will greatly increase the possibility of violent confrontations during the March and rally." Complaint par. 17. The plaintiffs argue that "the event planned by the Coalition will present a clear and present danger to the public safety." Complaint par. 18.

The above facts are set forth in the papers filed by the plaintiffs. The defendant filed a written opposition to the application on April 7, 1989 setting forth additional facts relating to the permits. In addition, the defendants submitted additional exhibits at [*6] the time of arguments held on the application. Those facts are set forth below.

On March 9, 1989, NOW filed a request to amend its application to include the same area as covered by the Coalition permit. Defendant Exhibit 1. That request was denied on March 24, 1989 since NPS had already granted the Coalition permit. Defendant's Exhibit 2.

On April 6, 1989, NPS granted Permit 89-152 to NOW. Defendant's Exhibit 4. That permit relates solely to the property under the control and jurisdiction of NPS and allows for the NOW demonstration to be held on the Washington Monument Grounds and the surrounding area. Id. The next permit that is relevant is the permit granted by the Metropolitan Police Department which sets forth the line of march from 15th Street N.W. along Constitution Avenue to First Street, N.E., to the Supreme Court of the United States, on the East side of the Capitol, there to disband in front of the Supreme Court. Defendant's Exhibit 5. Then, according to counsel for the defendant, the marchers will have the opportunity to walk around to the West side of the Capitol to hear speakers. Counsel for the defendant advised the Court that NOW has applied for the necessary [*7] permit from the United States Capitol Police, and that permit will or has been granted. Indeed, counsel informed the Court, that he understood that after applying for the above permit from the Capitol Police, NOW applied for additional space on the Capitol Grounds and that this has also been granted. The NOW permit does not include the area immediately west of the Reflecting Pool; that is, the area of the Coalition demonstration.

II

1989 U.S. Dist. LEXIS 3582, *

After giving careful consideration to the application and the opposition thereto, together with the record in this case, the Court concludes that the application should be denied. In view of the time constraints, the Court will very briefly set forth the reasons for its decision.

In order to be entitled to injunctive relief, the plaintiffs must demonstrate that they are likely to prevail on the merits, that they will suffer irreparable injury if injunctive relief is denied, that the granting of injunctive relief will not cause substantial harm to the other parties and finally, that the granting of injunctive relief is in the public interest, or at least, not adverse to the public interest. Wisconsin Gas Co. v. FERC, 244 U.S.App.D.C. 349, 353-354, 758 [*8] F.2d 669, 673-674 (1985); Washington Metropolitan Area Transit Authority v. Holiday Tours Inc, 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977); Virginia Petroleum Jobbers v. FPC, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958).

The plaintiffs have failed to demonstrate that they are likely to prevail on the merits. Based upon the record in this case, the Court concludes that plaintiffs cannot maintain this action. The March is sponsored by NOW, and it is NOW which applied for and secured all of the necessary permits. When it came to NOW's attention that a permit had been issued to the Coalition, NOW sought to amend its application for a permit to include the area covered by the permit issued to the Coalition. When NPS rejected that request, NOW continued to prepare for its March, and continued to seek additional necessary permits for the March. It is important to note that while NOW sought to amend its original application, when that request was denied, NOW did not appeal or seek judicial relief. This is all the more important in this case since it is clear from the record and from statements made during the course of the oral argument on the application that the plaintiffs [*9] are totally unaware of the planning for the March by NOW. Plaintiffs did not know (1) when the permit was issued to NOW, (2) that NOW had obtained an application from the Metropolitan Police Department, (3) that the line of the March was on Constitution Avenue, as opposed to Pennsylvania Avenue, (4) the arrangements for Marshals along the route of the March, and (5) the plans for the demonstration at the Supreme Court and the program to be presented on the West Side of the Capitol Grounds.

In addition, while the plaintiffs challenge the actions of the defendant in granting the permit, the plaintiffs have made no effort to join the Coalition as a party in the litigation. The effect of granting the relief sought by the plaintiffs would be to indirectly require the Coalition to cancel its plans for its "services" and to remove the 4400 crosses now in place pursuant to a permit issued by the NPS.

Of concern to the Court prior to the argument on the application was whether the two sides of the abortion issue would become involved in a shouting match over their amplification equipment, since both groups are permitted to have amplification equipment for the purposes of speakers. But, as [*10] is now clear, NPS has provided that the Coalition may not use its amplification equipment on April 9, 1989, the day of the March.

The above demonstrates that there are serious questions concerning standing by the plaintiffs to maintain this action and the failure to join an indispensible party, namely, the Coalition.

Moreover, with respect to the merits, the Court concludes that plaintiffs cannot prevail. From everything presented to the Court, it appears, based on the present record, that NPS addressed the applications presented by NOW and the Coalition pursuant to the applicable regulations. NOW had not applied for use of the area west of the Reflecting Pool and did not do so until after the Coalition had applied for that area and been granted a permit. When NOW thereafter applied for the same area, NPS denied the request and noted that the requests are processed in the order of receipt and that it had previously received and granted the Coalition permit. See 36 C.F.R. § 7.96(g)(4)(i).

Plaintiffs argue that the permits granted allow multiple occupancy of the same area, but that is not true. See 36 C.F.R. § 2.51(c)(1). The areas involved may be in the same vicinity, [*11] but the route of the March is a block north of the Coalition's Cemetery, and the Capitol demonstration area is on the east side of the Reflecting Pool, while the Coalition area is on the west side of the same Pool.

With respect to the question of danger and the possibility of conflicts between the two sides of the abortion issue, while that is a real question, it appears it has been considered and addressed by the NPS, the police departments involved, and by the Coalition and NOW. The Court notes that absent a clear showing of danger, the Court must give deference to the NPS and the respective police departments because they have the background and information and are in a far better position to judge the question of the public health and safety than this Court.

The Court must also conclude that the plaintiffs have failed to demonstrate that they are likely to suffer irreparable injury. Such injury "must be both certain and great; it must be actual and not theoretical." Wisconsin Gas Co., supra, U.S.App.D.C. at 354, F.2d at 754.

1989 U.S. Dist. LEXIS 3582, *

The granting of injunctive relief would cut short the demonstration planned by the Coalition and would affect its right to free speech.

Considering all [*12]  of the above factors, the application must be denied.

### III

The demonstration is planned for two days from this date so the Court's decision of the temporary restraining order is dispositive. The parties have agreed that the Court may treat the application for a temporary restraining order as a motion for a preliminary injunction since the matter has been fully briefed. The plaintiffs have agreed that the Court may consolidate the hearing on the motion with the hearing on the merits. see Fed. R. Civ. P. 65(a)(2). The defendant did not agree to the consolidation, but the Court concludes that in view of the posture of this case and the issues involved, it should consolidate and enter a final order. Based upon all of the above factors, the Court concludes that the case should be dismissed on the merits.

An appropriate order has been entered.

ORDER - April 7, 1989, Filed

Pursuant to the accompanying Memorandum, it is hereby

ORDERED that plaintiffs' Application for a Temporary Restraining Order, treated with the consent of the parties as a motion for preliminary injunction, is denied, and it is further

ORDERED that the motion for preliminary injunction is consolidated with the hearing [*13]  on the motion on the merits, and it is further

ORDERED that this case is dismissed with prejudice.